MRS. LITT YOUNGBLOOD V. HERMAN YOUNGBLOOD ET AL.

No. 6230.   Decided November 28, 1934.
(76 S. W., 2d Series, 759.)

*J. T. Spencer,* and *J. C. Lumpkins,* both of Waxahachie, for plaintiff in error.

The land on which deceased had lived together with the contiguous tract across the roadway was to all intents and purposes his homestead.   Hamm v. Brown, 29 S. W. (2d) 433; Oakwood State Bank v. Durham, 21 S. W. (2d) 588; Hinkle v. Higgins, 83 Texas, 615, 19 S. W., 147.

*Walter Jones, of Ennis,* and *W. V. Dunnam,* of Waco, for defendant in error, Herman Youngblood; *Farrar & Stovall,* of

Waxahachie, and *Tirey & Tirey*, of Waco, for other defendants in error.

Since the 99¼ acres of land, lying across the road from the tract on which deceased had lived, was in a separate tract from the original homestead of 53 acres and was purchased for rental purposes only, and was applied by W. F. Youngblood deceased, exclusively to such purposes, except as found by the jury same never constituted a part of his homestead. Lasseter v. Blackwell, 227 S. W., 944 (Com. App.) ; Lenares v. DeLinares, 93 Texas, 84, 53 S. W., 579.

Parol gift may be shown by statements of deceased persons. Lord v. New York Life Ins. Co., 95 Texas, 216.

Deceased, having disposed of all of his property by will, and provided what property of his separate estate was impressed with the homestead character, and the wife having accepted under such will and elected to abide by the terms thereof, she is therefore precluded from claiming the 99¼ acre tract in question as being impressed with the homestead. Parrish v. Hawes, 95 Texas, 185; 66 S. W., 209; First Texas Jt. St. Bank v. Chapman, 48 S. W. (2d) 651.

Mr. Judge SMEDLEY delivered the opinion of the Commission of Appeals, Section B.

Plaintiff in error, Mrs. Litt Youngblood, the surviving wife of W. F. Youngblood, deceased, sued defendants in error, the children of W. F. Youngblood by a former marriage, to establish a homestead right, as given by Section 52, Article 16, of the Constitution of Texas to the surviving wife, in two tracts of land, one containing 53 acres upon which the home was situated and the other an adjoining tract of 99¼ acres. Defendants in error admitted the surviving wife's homestead right in the 53 acre tract, but contested her claim to the other tract. Herman Youngblood, defendant in error, further asserted ownership superior to the claims of all of the other parties in the West 40 acres of the 99¼ acre tract by parol gift or sale followed by possession and improvement in good faith. After trial by a jury judgment was rendered awarding plaintiff in error a homestead right in the 53 acre tract, but denying her claim to the 99¼ acre tract, and sustaining Herman Youngblood's claim of title to the West 40 acres of the 99¼ acre tract. The judgment of the trial court was affirmed by the Court of Civil Appeals. (46 S. W. (2d) 390).

One of the assignments of error complains of the action of the trial court in overruling plaintiff in error's motion for an instructed verdict as to all of the land or at least as to all of

the same except the 40 acre tract awarded to Herman Young-blood. We have reached the conclusion from a careful examination of the entire statement of facts that (aside from possible issues of fact as to the 40 acres last referred to, and disregarding conflicts in the testimony with respect to facts which are not controlling) the evidence presented establishes as a matter of law the homestead character of the 99¼ acre tract as well as of the 53 acre tract at the time of W. F. Youngblood's death.

The undisputed facts are substantially as follows: W. F. Youngblood, who was a farmer, acquired during the life of his first wife a number of tracts of land, aggregating more than 400 acres. He bought the 53 acre tract in the year 1894 and resided on it continuously from 1906 until his death in 1929. He acquired the 99¼ acre tract in 1910. It lies immediately North of the 53 acre tract, being separated from it by an unfenced road used by the public and graded and kept in repair by the county. At one time there were fences along both sides of the road but they were removed about 1911 or 1912. The records in the county clerk's office do not show a conveyance of any part of either of the two tracts for a public road. For many years to the time of his death, W. F. Youngblood was not physically able to perform any considerable manual labor, and the lands that he owned were cultivated, usually on shares, by his sons and sons-in-law. Herman, the youngest and favorite son, lived with his father until he married in the year 1911, and after the death of his mother in 1915, he lived with his father and took care of him until his father married plaintiff in error in 1917. Prior to his second marriage, W. F. Youngblood made a partition of the community lands with his children, in which partition they conveyed to him the 53 acre tract and the 99¼ acre tract. From the time of her marriage to W. F. Youngblood until his death plaintiff in error lived with him in the home on the 53 acre tract, cooked and did the other household work and nursed and cared for him in the ill-health of his declining years. Youngblood bought the 99¼ acre tract in 1910 so that his daughter, Annie and her husband, Southard might live on it and be near him and his first wife, who was in poor health, and help take care of them. He leased this tract to Southard from year to year with the understanding that Southard and his wife might remain there "until he told him he wanted the place back". Southard and his wife thus occupied the land until 1922 and during that time they helped W. F. Youngblood in the work around his premises, fed his stock for

him, milked his cows, waited on his first wife and otherwise "helped the old folks along". Southard paid Youngblood as rent for the 99¼ acres one-fourth of the cotton and one-third of the feed crops depositing the proceeds of the rent cotton to Youngblood's credit and delivering the rent corn, oats and sorghum to Youngblood's barn. Youngblood made meal of part of the corn and used it in his home. The balance of the feed he used for his stock. During Southard's occupancy of the 99¼ acre tract Herman Youngblood cultivated the 53 acre tract. When Southard moved from the 99¼ acre tract in 1922, Herman Youngblood moved upon it and from that time until the time of the trial Herman cultivated both tracts, the entire 152¼ acres. His arrangement with his father was substantially the same as Southard's, renting from year to year on shares. There was no difference between the method of cultivation and use of the 53 acre tract and that of the 99¼ acre tract except that the house in which Youngblood resided was situated upon the 53 acres. The money obtained by Youngblood from the cotton raised on both tracts and his part of the feed from both tracts were used for the support of himself and wives and in furtherance of the enjoyment of their home. Herman Youngblood, like Southard and wife, during the time he cultivated his father's land constantly waited upon his father and rendered him aid in and around his home.

While there is positive and convincing testimony that W. F. Youngblood cultivated a garden and maintained an orchard on the 99¼ acre tract, using the vegetables and fruit in his home, and at times cut weeds and did other work on that tract, there is testimony which might be deemed sufficient to raise an issue as to such facts. We therefore accept as correct the statement in the opinion of the Court of Civil Appeals that W. F. Youngblood never cultivated crops on any part of the 99¼ acre tract either in person or by hired labor.

■ The facts which have been set out make a different case from Autry v. Reasor, 102 Texas, 123, 108 S. W., 1162; 113 S. W., 748. There the tract in controversy was detached from the tract upon which the home was situated. And there the decision finally made was distinctly placed upon the ground that there was "no evidence that the land was used for the purpose of a home other than that the proceeds (the rents) were probably used for the support of the family."

Under the facts of this case the two tracts were practically and in effect contiguous. The unfenced road between them afforded no substantial barrier to their use as one body of land.

It may be assumed in the state of the record that the public had nothing more than a bare right to use the road, with the title in the owner of the adjoining lands. It seems to have been but a country road graded and kept in repair by the county and leading off from the main highway. Since the two tracts are thus in effect at least contiguous, the rule in regard to segregated tracts is not appropriate, especially where as here the additional land subsequently acquired was used for the comfort and convenience of the family in like manner as that on which the home was situated.

As pointed out in the opinion in Ruhl v. Kauffman & Runge, 65 Texas, 723, 734, contiguity of lots or parcels of land "presents a situation decidedly favorable for extending the outside boundaries of the homestead limits", and while the constitution authorizes lots or parcels of land not contiguous to be united in one homestead, "it would naturally require more distinct evidences of such destination in proportion to the inconvenience of using as parts of the same home lots remote from each other."

It is as has been indicated the actual use of the additional land that controls our conclusion. This is not the ordinary case of renting land and using the rents in money or in kind for the support of the family. The peculiar facts which have been detailed constituted in our opinion a using of the land "for the purposes of a home" (Article 16, Sec. 51, Constitution of Texas).

Judge Robertson in Ruhl v. Kauffman & Runge, 65 Texas, 723, 734, said that "the actual use of a lot for the convenience of the family has always been regarded as the most satisfactory evidence of an intention to make it a part of the homestead."

The opinion in Iken & Company v. Olenick, 42 Texas, 195, contains a full and learned discussion of the meaning and scope of the homestead exemption. It is there shown that a lot or tract of land, though detached from that upon which the home is situated, may be said to be used for the purpose of a home when, by its particular use or appropriation, it contributes to the comfort and enjoyment of the mansion-house as a homestead.

Judge Batts in a vigorous and carefully reasoned opinion in Woodward v. Sanger Bros. (U. S. C. C. A.), 246 Fed. 777, 781, said: "Most of the rural homesteads in Texas furnish the means of living as well as the place of living."

Can it be doubted that W. F. Youngblood, by placing his daughter and her husband on the 99¼ acre tract, to reside there and cultivate the land and deliver to him a part of the crops for his and his wife's use in their home, and to be near

him and help him and his wife live and enjoy and maintain their home, was doing anything other than using that tract for the convenience of the family, as a means of living and as contributing to the comfort and enjoyment of his home? As has been shown above, after Southard and his wife left the 99¼ acre tract Herman Youngblood, the youngest son, lived upon it and cultivated it together with the 53 acre tract and in the same way helped his father to use all of the land for and in connection with the enjoyment of his home. Such presence of his children and their work on the land, with their care of him in his failing health, undoubtedly contributed directly and in a peculiar way to the comfort, convenience and happiness of his home. These facts constitute in our opinion conclusive evidence of the homestead character of the 99¼ acre tract.

The controlling facts of this case are similar to those in Baldeschweiler v. Ship, 21 Texas Civ. App., 80, 50 S. W., 644, the substance and effect of which were thus clearly and tersely stated in the opinion by Judge Williams:

"The land here in question was actually used in the same way and for the same purposes as that upon which the party lived. All was done under the scheme devised, by which it might best be made available for the support of the family. This manner of use was adapted to his condition and that of the family, and was one to which the property was adapted. In our opinion it was such as to make that connection with the use of the home itself which the constitution and the decisions require."

■ The trial court so submitted the case to the jury as to make Youngblood's intention control the decision of the homestead question. Investigation of intention need not be made when the land is actually put to homstead uses. Such actual use of the land is the most satisfactory and convincing evidence of intention. Schulz v. L. E. Whitham & Co., 119 Texas, 211, 217, 27 S. W. (2d) 1093; Little v. Baker (Sup), 11 S. W., 549; Texas Land & Loan Co. v. Blalock, 76 Texas, 85, 13 S. W., 12; Ruhl v. Kauffman & Runge, 65 Texas, 723; Speer's Law of Marital Rights, Sections 461-462.

Defendant in error, Herman Youngblood, alleged that W. F. Youngblood prior to his marriage to plaintiff in error made a parol gift or sale to him of the West 40 acres of the 99¼ acre tract, that he complied fully with the terms of such gift or sale and that, relying thereon, he in good faith took possession of the land and made permanent and valuable improvements. He further alleged that such possession was taken and such improvements were made with the knowledge, acquiescence and

consent of plaintiff in error and with knowledge on her part that he was relying upon the parol gift. The jury in answer to special issues found that the gift of the land was made, that Herman Younglood took actual possession of the same and made permament and valuable improvements thereon, in reliance upon such gift, and that the possession was taken and the improvements were made with the knowledge of plaintiff in error. The trial court in its judgment found that the gift of the land was made prior to W. F. Youngblood's marriage to plaintiff in error.

There are but three assignments of error in the application for writ of error, one of them presenting the contention that the evidence establishes as a matter of law the homestead character of the 99¼ acre tract and the other two complaning of the manner in which the question of homestead was submitted to the jury. None of them attacks the findings of the jury or the judgment of the trial court with respect to the parol gift of the 40 acres. No question is presented here as to such findings or as to that part of the judgment. It may be added that there is evidence tending to sustain them.

The judgments of the trial court and the Court of Civil Appeals are reversed insofar as they deny to plaintiff in error recovery of a homestead right in the tract of 99¼ acres described in her petition, except the West 40 acres of the same, and judgment is here rendered in favor of plaintiff in error against defendants in error awarding to her the homestead right given by the Constitution of Texas to the surviving wife in and to said tract of 99¼ acres, except the West 40 acres thereof. In other respects the judgments of the trial court and the Court of Civil Appeals are affirmed.

Opinion adopted by Supreme Court November 28, 1934.