RANCHO OIL COMPANY ET AL V. ALLEN POWELL ET AL.

No. 8121. Decided November 10, 1943.
Rehearing overruled December 22, 1943.
(175 S. W., 2d Series, 960.)

*Thompson, Walker, Smith & Shannon,* and *Hugh B. Smith,* all of Fort Worth, *Weeks, Hankerson & Surles, Russell Surles,* all of Tyler, *Park & Park* and *J. F. Park,* of Corpus Christi, and *Jack Price,* of Longview, for petitioners.

An oil and gas lease purporting to convey a determinable fee to part, if not all, of the oil and gas, together with exclusive right of possession and without recognition of any right of the lessor, and the recording of the lease and assignments of a portion to lessee, followed by his entry, possession and payment of taxes, constituted a dissezin of and constructive notice to the lessor, and lessee's possession and claim must be deemed to be coextensive with the terms of their recorded grant and lessees were entitled to judgment. Jones v. Siler, 129 Texas 18, 100 S. W. (2d) 352; McBurney v. Knox, 273 S. W. 819; Starr v. Dunbar, 69 S. W. (2d) 816; Allison v. Texas Co., 161 S. W. (2d) 167; Acklin v. Paschal, 48 Texas, 147.

*McCraw & Holt* and *W. J. Holt,* all of Dallas, *J. A. Stanford, C. M. Kennedy, Ireland Graves, Black Graves & Stayton,* all of Austin, and *Bramlette, Levy & Bolton,* of Longview, for respondents.

The lease expressly reserving to the lessee out of the production of oil fixed royalty interest therein, there was created and remained a separate and distinct interest and right in the lessor of such reserved portion of royalty; and such interest and right to the fixed portion of royalty is not subject to the doctrine of sale in inverse order of alienation in behalf of petitioners. Texas Co. v. Daugherty, 107 Texas 226, 176 S. W. 717; Reynolds v. McMann Oil Co., 11 S. W. (2d) 778; Richardson v. Levi, 67 Texas 359, 3 S. W. 444.

Mr. Judge Hickman, of the Commission of Appeals, delivered the opinion for the Court.

This suit was filed by respondent, Allen Powell, to recover an undivided one-half interest in two contiguous tracts of land aggregating between ten and eleven acres situated in Gladewater, Gregg County, and for an accounting for the oil and gas produced therefrom. Ida Johnson and husband, Alex Johnson, their oil and gas lessees, their grantees of mineral interests subject to the leases, herein called royalty owners, and claim-

ants of surface rights under grants from them were named as defendants.

The material facts are in the main uncontroverted. The land was formerly community property of Doc Powell and his wife, (Ida Powell (now Ida Johnson). It was deeded to Doc Powell in 1917 and was thereafter used by him and his wife, Ida, as their homestead until his death in 1918, intestate. Doc Powell was survived by his wife, (now Ida Johnson) and respondent, Allen Powell, a son by a former marriage. As the only child of Doc Powell, respondent, Allen Powell, inherited from him an undivided one-half interest in the land, burdened only with the homestead rights of his stepmother. After the death of Doc Powell respondent left Texas and continued to live in other states of the Union and in cities in Texas other than Gladewater until shortly before the filing of this suit, during which time he received no information concerning his stepmother or the land. In 1920 Ida Powell married Alex Johnson and moved to a small tract of land owned by him about three miles distant from Gladewater in Upshur County where they continued to live as husband and wife until July, 1931, when they moved upon the tract in controversy, since which time they have continuously occupied it as their home. On January 2, 1931, Ida Johnson, joined by her husband, Alex, executed an oil and gas lease to G. C. Dunaway purporting to cover the entire mineral interest in the land. The lease contained the usual terms of such instruments and reserved a one-eighth royalty. Petitioners, Rancho Oil Company and R. A. Josey, Inc., are the assignees of the lease as to a portion of said land and T. W. Lee as to the remainder. After the execution of the lease the Johnsons executed deeds to a number of persons separately conveying undivided royalty interests and certain owners of those interests are also petitioners.

In answer to special issue the jury found in favor of the lessees and also in favor of the royalty owners on the issue of limitation under the five-year statute, Art. 5509. The judgment rendered by the trial court is thus described in the opinion of the Court of Civil Appeals.

"Before rendition of the judgment, appellant, (Allen Powell) and defendants Ida and Alex Johnson and all the defendants that claim only surface rights under Ida, and three of the defendants who claim certain undivided interests in the 1/8 royalty under deeds from Ida, executed and filed an agreement settling the matters as between them. The agreement was approved by the

court and incorporated in the judgment. After overruling appellant's motion for judgment notwithstanding the findings of the jury, the court rendered judgment based upon the verdict of the jury sustaining the pleas of limitation under the five-year statute in favor of the lessees, T. W. Lee, Rancho Oil Company and R. A. Josey, Inc., as to the 7/8 leasehold interest, and in favor of J. C. and J. P. Jackson and J. F. Park as to the respective undivided interests claimed by them in what for convenience may be here termed the 'second' 1/2 of the 1/8 royalty sold by Ida. Upon the facts the court entered judgment in favor of all the defendants claiming undivided interests in the 'first' 1/2 of the 1/8 royalty sold by Ida."

Another provision of the trial court's judgment was as follows:

"It further appearing to the Court that plaintiff and the defendants other than those mentioned in the hereinabove set out settlement agreement agreed in open court that it would not be necessary to present evidence on the question of improvements in good faith, oil runs, and the accounting features to the jury, but that said matters could be presented to the Trial Judge in the event the Trial Court or Appellate Courts rendered judgment in favor of the plaintiff:

"IT IS THEREFORE ORDERED That said stipulation be and the same is hereby approved and made a part of this judgment."

The Court of Civil Appeals reversed the judgment of the trial court in so far as same ran in favor of the lessees and of the claimants of royalty interests in the "second 1/2 of the royalty" and rendered judgment in favor of respondent, Allen Powell. The trial court's judgment in favor of the claimants of the "first 1/2 of the royalty" was affirmed. 170 S. W. (2d) 273. The term "first 1/2 of the royalty" was used by the court to denote the 1/2 which Ida Johnson sold first. She owned that interest and had the legal right to convey same. The term "second 1/2 of the royalty" was used to denote the remaining 1/2 thereof owned by Allen Powell, a part of which Ida Johnson undertook to convey.

The respondent, Allen Powell, who was appellant in the Court of Civil Appeals, urged in that court two principal grounds for reversal of the trial court's judgment. One ground was that Ida Powell, upon the death of her husband, Doc Powell, remained in possession of the property under her homestead rights therein, and that after she married Alex Johnson the two tracts of land, the one owned by her and the one owned by him, ag-

gregating together less than 200 acres, each of which had theretofore been impressed with the homestead character, comprised their homestead. It was further argued that from this it followed that Ida Johnson's relation to the land is similar to that of a life tenant and respondent's relation that of a remainderman, against whom limitation will not run in favor of such life tenant or those claiming under her during her lifetime. This ground was not sustained by the Court of Civil Appeals. Another ground was that, if Ida Johnson had abandoned her homestead rights in the property, then upon such abandonment she and respondent became tenants in common, each owning a 1/2 undivided interest therein, and that the facts did not raise the issue of limitation as applicable to persons in that relationship. This latter ground was sustained by the Court of Civil Appeals and its judgment reversing the trial court's judgment in the main and rendering the cause was based thereon. It is our conclusion that the Court of Civil Appeals should have sustained the first ground and this opinion will be confined to a discussion of that question. The limitation question, as applicable to tenants in common, will not be reached and we shall express no opinion thereon, for, in our view of the evidence, respondent is, in effect, a remainderman.

It is pointed out that respondent did not file a motion for rehearing in the Court of Civil Appeals challenging its ruling of the homestead question. That was wholly unnecessary. That court having rendered judgment in his favor, there was no occasion for his filing a motion for rehearing therein. He was satisfied with the judgment and desired no rehearing. Were he seeking to have us reverse that judgment, a different question would be presented, but, since he is seeking only to uphold it, we are authorized to consider every ground properly assigned in that court for the purpose of determining whether an affirmance should be ordered. This follows from the application of the rule that, if that court's judgment is correct, it should be affirmed.

As bearing upon the homestead question these further facts are noted: Doc Powell was a farmer and before the purchase of this property he and his wife, Ida, were tenant farmers. While the land is now in the city limits of Gladewater, it was rural, agricultural land when acquired by the Powells and at all later times relevant to this decision. The house in which they lived on the premises was hardly fit for human habitation. After the death of Doc Powell, Ida Powell rented the place to a share cropper and went to work for a Mr. Jetter. She helped make

two crops for him. She married Alex Johnson in February, 1920, and thereafter the two, together with Alex' children, lived on his farm situated about 3 or 4 miles from hers until in February, 1931, when they moved back to her tract. For two or three years after the death of Doc Powell Ida Powell was unable to have her place worked, but in 1922 she rented it on the shares. In 1923 she built a new house on the place for the tenant then culti- vating it and he thereafter continued to farm it on the shares until Ida and Alex Johnson moved back on it in 1931. The crops grown by the tenant were corn and cotton and the rental was the customary 1/3 of the corn and 1/4 of the cotton. It is es- tablished that Ida Powell Johnson and both of her husbands were farmers, and that farming was the use to which their lands were devoted.

No special issue on the question of whether or not the home- stead rights of Ida Powell Johnson were ever abandoned was submitted to the jury. There was submitted the question of whether, after the marriage of Ida and Alex Johnson, he moved to his farm about three miles from Gladewater, and the further question of whether at that time Alex Johnson made his farm the home of himself and Ida Johnson. Of course, both questions were answered in the affirmative. No other answer could have been made to them under the evidence. But they determined nothing on the issue of abandonment.

■ It is apaprent that the trial court proceeded upon the theory that when Ida Powell married Alex Johnson and moved with him to his farm near hers she automatically lost her homestead rights "as the widow of Doc Powell," and that theory was adopted by the Court of Civil Appeals. In this we think both courts fell into error. The exemption of the homestead to Ida Powell was not merely during her widowhood, but so long as she might elect to "use or occupy the same as the homestead." Const. Art. 16, sec. 52. It is not required of her that she both use and occupy, but only that she either use or occupy. The question for decision is the same as it would have been had Doc Powell, the first husband, acquired the Alex Johnson place and moved his family to it. Foreman v. Meroney, 62 Texas 723.

■ By the express provisions of our Constitution, Art. 16, sec. 51, a homestead "may be in one or more parcels," and "any temporary renting of the homestead shall not change the char- acter of the same, when no other homestead has been acquired." The different tracts may be entirely disconnected from the tract upon which the home, that is the dwelling place, is situated and may, under some facts, be remote therefrom. "Neither feet nor miles, but use is the test." Speer's Law of Marital Rights, 3rd.

Ed., sec. 463, p. 556. The acquiring of a new home is not always the acquiring of a new homestead, and one does not necessarily abandon a homestead by merely moving his home. This Court recently stated that "* * * beginning as early as 1857, in an opinion by Chief Justice Hemphill in Gouhenant v. Cockrell, 20 Texas 96, our courts have held that 'it must be undeniably clear and beyond almost the shadow, at least (of) all reasonable ground of dispute, that there has been a total abandonment with an intention not to return and claim the exemption'." Burkhardt v. Lieberman, 138 Texas 409, 159 S. W. (2d) 847, 852.

■ It is the position of petitioners that there is some competent evidence that Ida Johnson abandoned her homestead rights with the fixed intention not to return and claim them. The evidence most favorable to that view is the following testimony of Ida Johnson:

"Q. * * * when you moved to Upshur County and lived on Alex's place there, with Alex on his farm, did you or not intend to make Alex's home your home and your homestead?
"A. Yes, sir.
"Q. Did you or not intend to abandon and give up the Ida Johnson tract as your home and homestead?
"A. Yes, sir.
"Q. At that time did you intend not to return to the Gladewater place as your home or homestead?
"A. Yes, sir, I never did aim to come back there."

It is obvious that what she meant by this testimony was that she did not intend to reside again on her tract. It certainly is no testimony that she did not intend to use same in the future just as she had been using it in the past. There was no dwelling on it fit for occupancy by her and Alex and his children. Doubtless she intended to continue to live on Alex's tract and in his house, but that is not in the least inconsistent with the intention to continue to use her tract as a farm just as formerly she had done. It is the acquiring of a new homestead and not of a new home that operates as an abandonment of homestead rights. Since the two tracts of land were in the same vicinity, were both agricultural lands suitable to the occupation of the family, and together comprised less than 200 acres, no occasion ever arose wherein Ida Johnson was ever called upon to elect whether or not to abandon her homestead rights. No possible reason can be perceived why she should voluntarily conclude to throw away valuable homestead rights given by the Constitution without receiving any benefit what-

ever therefrom, and without ever having been called upon to do so. Ida Johnson obviously made no distinction between home and homestead, and evidence based on a mistake amount to no more than a scintilla of evidence. First State Bank v. Jones, 107 Texas 623, 183 S. W. 874; Texas Law of Evidence, McCormick & Ray, Sec. 4.

Many other decisions by courts of this State could be cited in support of our conclusion that Ida and Alex Johnson did not abandon her homestead rights, but it is thought that the following are sufficient to reflect the status of our decisions. Cocke v. Conquest, 120 Texas 43, 35 S. W. (2d) 673; Youngblood v. Youngblood, 124 Texas 184, 76 S. W. (2d) 759; Baldeschweiler v. Ship, 50 S. W. 644; Woodward v. Sanger Bros., 246 Fed. 777.

But even if there could be said to be some evidence that the parties intended to abandon Ida Johnson's homestead tract, it does not follow that such intention was sufficient to accomplish that purpose. It is conclusively shown by this record that they never, in fact, abandoned it, and it follows that their intention to do so would not amount to abandonment.

In Ruhl v. Kaufman & Runge, 65 Texas. 723, 734, 735, the court says:

"The actual use of a lot for the convenience of the family has always been regarded as the most satisfactory evidence of an intention to make it part of the homestead. In reported cases involving controversies over the intent, this best evidence of it did not generally exist, and the determination of the issue has been forced to other means. But even the positive and formal declaration of both husband and wife of a contrary intent, as has been held, are not sufficient to divest property, actually used as a homestead, of the homestead protection (Jacobs v. Hawkins, 63 Tex. 1), even when the declaration is made at the very time to which the issue is confined. * * *."

The above case, among others, was cited on this very point in Youngblood v. Youngblood, 124 Texas 184, 76 S. W. (2d) 759. What Ida and Alex Johnson did amounted to no more than if they had moved from a dilapidated dwelling on one part of their homestead tract to a better dwelling on another part of the same tract without changing the use to which the entire tract had theretofore been put.

Many cases are cited and relied upon by petitioners. Of course, we have considered all of them, but find it unnecessary to lengthen this opinion by discussion of them. Much of the

apparent conflict claimed to exist between the cases cited above and those relied upon by them disappears when it is pointed out that this is not a case in which it is sought to add additional land, to an existing homestead tract, but is a case in which the tract under consideration and the Alex Johnson tract were both actually impressed with the homestead character by occupancy and use before the marriage of Ida and Alex Johnson.

The homestead rights of Ida Johnson are in the nature of a life estate. Sargeant v. Sargeant, 118 Texas 343, 15 S. W. (2d) 589. Her position with reference to the land was therefore analagous to that of a life tenant, and the position of respondent, Allen Powell, analagous to that of a remainderman. In such a relationship limitation will not run in favor of her or those claiming under her during her lifetime. Olsen v. Grelle (Com. App.) 228 S. W. 927; Perkins v. Perkins, 166 S. W. 915 (error refused); Starr v. Dunbar, 69 S. W. (2d) 816 (error refused.)

The judgment of the Court of Civil Appeals, which affirms the trial court's judgment in part and reverses and renders same in part, will be affirmed.

Opinion adopted by the Supreme Court November 10, 1943.

Rehearing overruled December 22, 1943.