**In re Robert D. PERRY, Debtor.**

**Robert D. Perry, Appellant,**

v.

**Dennie & Ellen Dearing, Appellees.**

**Cause No. SA–01–CA–0566–OG.**
**Bankruptcy No. 00–51188–LMC.**

United States District Court,
W.D. Texas,
San Antonio Division.

March 27, 2002.

Steven G. Cennamo, Attorney at Law, San Antonio, TX, for appellant.

Benjamin R. Bingham, Bingham & Lea, P.C., San Antonio, TX, for appellees.

## OPINION AND ORDER AFFIRMING IN PART AND REVERSING IN PART ORDER AND JUDGMENT OF BANKRUPTCY COURT

ORLANDO L. GARCIA, District Judge.

Debtor Robert D. Perry appeals the April 12, 2001 order of the bankruptcy court[1] and the amended judgment signed May 15, 2001, in which the court sustained the objections to his homestead claim in all but 1.34 acres of the 85 acres he had claimed as rural homestead. The Perrys reside on the 1.34–acre tract. The bankruptcy court concluded that Perry's conveyance of a 26–acre tract to his wholly-owned corporation, American Campgrounds, Inc., was not a sham or pretended sale, that the remaining 59 acres were not contiguous to the 1.34–acre tract and had no direct relationship to it, and that Perry's operation of a campground business on the acreage forfeited his homestead exemption to all but the 1.34 acre tract on which he and his wife resided. Finding that the entire 85 acres are homestead, this Court will sustain the ruling as to the 1.34 acre tract and reverse the ruling as to the remainder of the acreage.

Perry filed a petition for relief under Chapter 7. He claimed as exempt homestead 85.51 acres[2] of land in Val Verde County where he lives and operates a business known as American Campgrounds, which contains sites for mobile homes, recreational vehicles (RVs), and tent camping. The land lies some six miles outside the city limits of Del Rio. The 85 acres is

---

1. *In re Perry,* 267 B.R. 759 (Bankr.W.D.Tex. 2001).

2. The schedules list the acreage as 90 acres, and it is sometimes referred to as a 90–acre tract in the briefs. It will be referred to in this opinion as "the 85 acres," or "the 85–acre tract."

composed of three tracts: the 59–acre tract, a 20 foot strip of land, and a 26–acre tract. The 1.34–acre tract on which Perry and his wife reside is included in the 26–acre tract. The campground's mobile home, RV, and tent sites are also located on the 26–acre tract. The contiguous 59–acre tract contains a shop, a storage building, a sewage treatment plant, and recreational facilities, all used in conjunction with the campground.

Perry and his wife purchased the 26–acre tract in February 1980.[3] In 1985, Perry approached the Bank & Trust S.S.B. (f/k/a Del Rio Bank & Trust) ("the Bank") about borrowing money to finance the construction of cabins on the campground. SF 9/19/00 at 195. Perry testified that Bill Stroman, the Bank's lawyer, told him the Bank would not loan him money to finance improvements on his homestead. *Id.* at 199–200. Stroman then set up American Campgrounds, Inc. as a wholly-owned corporation, and Perry and his wife conveyed the 26 acres to the corporation. *Id.* Perry left the entire transaction up to Stroman. SF 9/18/00 at 87. The Bank then loaned $127,000 to the corporation, secured by the 26–acre tract. The corporation paid nothing to the Perrys for the conveyance. SF 9/19/00 at 225.

In 1993 Perry refinanced the corporation's loan from the Bank with a new loan, again secured by the 26–acre tract. There was no deed conveying the 26 acres from the corporation to the Perrys. In connection with this loan, Perry and his wife signed an affidavit stating that the corporation was their wholly-owned corporation, that the corporation was now defunct, and that they were assuming all liabilities for

the corporation and operating it as a sole proprietorship.

Also in 1993, Dennie and Ellen Dearing agreed to purchase the 26 acres from Perry, but Perry failed to deliver the deed to the Dearings as agreed.[4] The Dearings sued Perry for breach of contract in state court and obtained a verdict against him. After the verdict the Dearings discovered that the 26 acres had been deeded to American Campgrounds, Inc., and they began attempting to compel Perry to turn over his stock in the corporation.

The Dearings, as judgment creditors of Perry, objected to Perry's claimed homestead exemption in the 85 acres on the ground that American Campgrounds, Inc., not Perry, owns the tract. The bankruptcy court held a hearing on those objections on September 18 and 19, 2000. The Bank had not filed an objection and did not participate in the hearing. The court recognized, however, that if the transaction from Perry to the corporation were found to be void, it would invalidate the Bank's lien. Consequently, the court ordered that the Bank be given notice of the proceedings and an opportunity to respond. The Bank then filed an objection to the claimed exemption in the 26–acre tract and presented evidence at a second hearing on January 10, 2001.

At the conclusion of the second hearing, the court found that the 1985 transfer was not a sham or pretended sale, and the court took other matters under advisement. On April 12, 2001 the bankruptcy court issued an order holding that the 59–acre tract qualified as exempt rural homestead, and that the 26–acre tract could not qualify as a rural homestead because it

---

**3.** They subsequently purchased the 59–acre tract. The particulars of that transaction are not relevant to this appeal.

**4.** The particulars of Perry's and the Dearings' dealings are set out in footnote 2 of the bankruptcy court's April 12, 2001 order. 267 B.R. 759, 762 n. 2.

had been abandoned by the sale to the corporation, or alternatively, that it had been used for business purposes. After Perry and the Dearings submitted motions to alter or amend the judgment or for new trial, the bankruptcy court issued an amended judgment on May 15, 2001 holding that the 59–acre tract was not exempt because the Perrys did not live on it, and that it was not sufficiently related to the 1.34 acres to be exempt. The court then held that the Perry's had "beneficial title" to the 26 acres, and that Perry could claim a homestead exemption on the 1.34 acre tract.

■ To the extent the appeal presents questions of law, the bankruptcy court's judgment is subject to de novo review. *Bradley v. Pacific Southwest Bank (In re Bradley)*, 960 F.2d 502, 507 (5th Cir.1992). Findings of fact, however, will not be set aside unless clearly erroneous. *Id.; Toma Steel Supply, Inc. v. TransAmerican Natural Gas Corp. (In re TransAmerican Natural Gas Corp.)*, 978 F.2d 1409, 1415 (5th Cir.1992); FED. R. BANKR. P. 8013. A finding is clearly erroneous, although there is evidence to support it, when the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *Bradley*, 960 F.2d at 507.

### Procedural Errors

■ Perry argues that the bankruptcy court erred in permitting the Dearings to amend their objections orally and in permitting the Bank to object after the deadline for objections. *See* FED. R. BANKR. P. 4003(b) (objections to claimed exemptions must be filed no later than 30 days after creditors' meeting or 30 days after any amendment to the list of exemptions or supplemental schedules). As indicated above, the bankruptcy court allowed the Bank to file an objection after the first

hearing had concluded, which was well after the 30–day limit. While the court's motives were laudable, the bankruptcy court has no authority to extend the objection date. *Taylor v. Freeland & Kronz*, 503 U.S. 638, 644, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992); *In re Stoulig*, 45 F.3d 957, 957–58 (5th Cir.1995) (per curiam). The Bank's tardy objection should not have been allowed and cannot be considered. "Deadlines may lead to unwelcome results, but they prompt parties to act and they produce finality." *Taylor*, 503 U.S. at 644, 112 S.Ct. 1644.

■ The Dearings' objection, however, was timely, and Perry has offered no authority for the proposition that a timely objection cannot be amended. The Dearings objected that, "[t]he purpose of forming the corporation was to facilitate a nonpurchase money loan from Del Rio Bank & Trust, secured by what would otherwise be a homestead property of the Debtor." SF 9/18/00 at 37. Of course, this objection would have amounted to a stipulation by the Dearings that the 1985 transfer to the corporation was a sham, and, as will be seen below, it would follow that the sham transaction was void and would not forfeit the homestead exemption. After this was made clear to the Dearings' counsel at the September 18, 2000 hearing, the court permitted the Dearings to argue that the transfer to the corporation was not a sham and required Perry to prove that it was. SF 9/18/00 at 37–43.

Leave to amend pleadings is to be granted liberally, but it should not be granted if it would cause undue prejudice to the opposing party. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). Perry claims that the amendment prejudiced him by newly injecting the issues of pretended sale and "[w]hether the 26 acres were rural property and rural homestead," and by making him try

these issues without sufficient evidence. The issue of a possible sham transaction was not a new one. Perry himself raised it in response to the Dearings' objections by asserting that the transfer to the corporation was a void and pretended sale. Having raised the issue in defense to the objections, Perry should have been prepared to prove it. There was no prejudice.

Because the Dearings' objection was timely and the amendment was properly granted, the Court must now consider whether the order of the bankruptcy court sustaining the bulk of their objections should be affirmed.

### Sham Transaction

■ Perry argues that the 1985 conveyance of the 26–acre tract to the corporation was a sham or pretended sale. This is a question of fact, and is governed on appeal by the "clearly erroneous" standard of review. *In re Girard,* 104 B.R. 817, 821 (Bankr.W.D.Tex.1989).

■ Homestead laws are favored and are liberally construed to protect the homestead. *Inwood N. Homeowners' Ass'n v. Harris,* 736 S.W.2d 632, 634–35 (Tex.1987). The initial burden of proof to establish the existence of a homestead is on the claimant. *In re Niland,* 825 F.2d 801, 807 (5th Cir.1987). Once a homestead is established, it is presumed to continue until it is terminated, and the party asserting termination has the burden of proof. *Niland,* 825 F.2d at 808; *Sullivan v. Barnett,* 471 S.W.2d 39, 42 (Tex.1971). Termination can occur through death, abandonment, or voluntary alienation. *United States v. Rodgers,* 461 U.S. 677, 685–86, 103 S.Ct. 2132, 76 L.Ed.2d 236 (1983).

■ To establish a homestead claim in rural property,[5] the claimant must do nothing more than: (1) reside on part of the property; and (2) use the property for purposes of a home. *Texas Dep't of Mental Health and Mental Retardation v. Ellison,* 914 S.W.2d 679, 684 (Tex.App.Austin 1996, no writ); Tex. Const. art. XVI, § 51. Perry has unquestionably met these minimal requirements; it is undisputed that he and his wife lived on the campground from 1985 through the hearings and used it to support their family. SF 9/19/00 at 221–22. Therefore, the burden shifted to the Dearings to prove that the homestead had terminated.

■ The Dearings contended that Perry's homestead claim terminated in the 26–acre tract when he and his wife conveyed it to American Campgrounds, Inc. in 1985. The fact that the Perrys conveyed the property to the corporation is not in question. SF 9/18/00 at 42, 88. Case law holds that the exemption is abandoned by a conveyance even if the claimants continue to live on the property. *In re Robinson,* 180 B.R. 174, 175 (Bankr.E.D.Tex.1995). But it is also the law that a conveyance of a homestead that is not intended to pass title and that has been simulated to shield the homestead from creditors is void. *In re Moody,* 862 F.2d 1194, 1199 (5th Cir.1989); *Hughes v. Parmer,* 164 S.W.2d 576, 577 (Tex.Civ.App.Austin 1942, no writ). A void transfer cannot constitute an abandonment of homestead rights. *Id.; McGahey v. Ford,* 563 S.W.2d 857, 861 (Tex.Civ. App.Fort Worth 1978, writ ref'd. n.r.e.).

■ The bankruptcy court found at the conclusion of *both* hearings that the 1985 conveyance by the Perrys to American Campgrounds, Inc. was not a sham conveyance. *In re Perry,* 267 B.R. at 763. Therefore, the court concluded, Perry abandoned his homestead interest in the

---

5. The bankruptcy court concluded that all the property in question is rural; no one challenged this finding, and the Court finds ample evidence to sustain it.

property by conveying it to the corporation. *Id.* But the bankruptcy court supported that conclusion primarily by the "very competent testimony" from Bill Lewis, the title company officer who handled the 1985 closing, and Mike Healy, the Bank's loan officer on the 1985 transaction. SF 1/10/01 at 153–54. Both Lewis and Healy, however, were called by the Bank at the January hearing, and their testimony should not have been presented. Therefore, the only evidence as to the nature of the 1985 transfer to the corporation is from Perry. As indicated above, Perry testified that the corporation and the conveyance were set up by Stroman, and that the property was transferred to the corporation so that the Bank would make the loan using the property as collateral. This testimony was not impeached or contradicted. Perry's testimony also indicates that American Campgrounds, Inc. was never operational—there are no corporate minutes, there was no corporate bank account, the corporation never filed tax returns, and it was never formally dissolved. *Id.* at 201–02, 218–19. All licenses and permits pertaining to the property and all utilities are in Perry's name. *Id.* at 221. The campground bank account is in the name of American Campgrounds, not American Campgrounds, Inc. *Id.* at 241. Perry testified that when he transferred the property to the corporation he intended to keep it as his home and homestead. *Id.* at 240–41. Significantly, the corporation paid the Perrys nothing for the "conveyance" of the 26 acres. *Id.* at 225.

Thus, the bankruptcy court's finding that the transaction was not a sham is clearly erroneous. Because the void transfer does not constitute an abandonment of homestead rights, Perry's homestead rights are not negated by the sham sale to the corporation.

Even if the Court is wrong in this conclusion, there is another reason why the Dearings' objections should be overruled. The parties have assumed that if legal title actually passed to American Campgrounds, Inc., the homestead exemption would be unavailable to Perry. Under Texas law, however, a homestead claimant need not hold the property in fee simple in order to invoke the exemption—any possessory interest coupled with the requisite occupancy by the claimant is sufficient to support a homestead claim. *Resolution Trust Corporation v. Olivarez,* 29 F.3d 201, 205 (5th Cir.1994). Claimants in permissive possession of the property can assert the homestead exemption against their creditors even though they do not possess legal title. *See Birdwell v. Burleson,* 31 Tex.Civ.App. 31, 72 S.W. 446, 449–50 (1902, writ ref'd) ("where property is rightfully and peaceably held in possession, and occupied as the home of the family, it should be exempt from forced sale, even though that possession be merely permissive"); *Shepler v. Kubena,* 563 S.W.2d 382, 386 (Tex.Civ.App.Austin 1978, no writ) (claimant "having naked possession without any title ... [could] maintain her claim of homestead against all creditors save the true owner or one having better title"), *disapproved on other grounds, Holy Cross Church of God in Christ v. Wolf,* 44 S.W.3d 562 (Tex.2001). *See also Cleveland v. Milner,* 141 Tex. 120, 170 S.W.2d 472, 475 (1943) (homestead claimants could have successfully invoked homestead exemption in a suit by their creditor to subject property to payment of debt). "Further, even where a grantor conveys property underlying his homestead by effective deed, if there is no abandonment of the homestead by the grantor occupant, the grantor's creditors cannot complain that the grantor has extinguished his homestead." *Moody,* 862 F.2d at 1199.

Thus, even assuming legal title passed to the corporation, Perry, in permissive possession of the property, can assert the homestead exemption against his judgment creditors, the Dearings.

The Dearings rely heavily on two cases: *In re Girard*, 104 B.R. 817 (Bankr. W.D.Tex.1989); and *Eckard v. Citizens National Bank in Abilene*, 588 S.W.2d 861 (Tex.Civ.App.Eastland 1979, writ ref'd n.r.e.). In both cases, the homestead claimants transferred their homesteads to solely-owned corporations to obtain loans using the property as collateral. The cases are distinguishable. In both, the lender, rather than a third-party creditor, challenged the claimants' assertion of sham or pretended transfers. In addition, both cases dealt with bona fide transfers of business homesteads to corporations, accompanied by intent to relinquish homestead rights. *Girard*, 104 B.R. at 822; *Eckard*, 588 S.W.2d at 862. In the present case the only evidence shows that the transaction to the corporation was set up by the Bank's attorney, and that Perry intended to keep the property as his homestead.

Thus, the conveyance of the 26 acres was a sham conveyance that passed no title to the corporation. *See Moody*, 862 F.2d at 1199 (conveyance of a homestead that is not intended to pass title and that has been simulated to shield the homestead from creditors is void); *Sullivan v. Barnett*, 471 S.W.2d 39 (Tex.1971) (ineffective deed to real estate did not constitute abandonment of homestead rights where grantor remained on land and continued to use it as a homestead). Even if the transfer was bona fide, Perry, as a tenant at will using the property for the shelter and support of his family, may assert the homestead exemption against his creditors. *See Moody*, 862 F.2d at 1200 ("even if we should assume that the conveyances were

valid, Moody still had a possessory interest in the property sufficient to maintain his homestead interest").

### Rural Homestead

██ Even so, the Dearings may still prevail if, as the bankruptcy court found, Perry has waived his homestead rights in the part of his property he operates as his campground business. There is no question that the 26–acre tract is used for the operation of a business, save perhaps for a portion of the 1.34–acre tract on which the Perrys reside. The bankruptcy court concluded that even if the Perrys reacquired an interest in the 26–acre tract by way of their affidavit stating that the corporation was defunct, it would not qualify as a rural homestead because it is used for non-agricultural business purposes. *Perry*, 267 B.R. at 768–70. The bankruptcy court relied on *In re Bradley*, 960 F.2d 502 (5th Cir.1992). In *Bradley's* sixth footnote, the Fifth Circuit stated that "the operation of a business on part of a rural homestead forfeits the homestead protection on that part of the property." *Id.* at 506 n. 6. Perry contends that this statement in *Bradley* is not good authority because it is dictum and it is wrong. The Court must agree with Perry.

██ The Texas Constitution, from whence the homestead protection derives, states that a rural homestead "shall consist of not more than two hundred acres of land, which may be in one or more parcels, with the improvements thereon ...." Tex. Const. art. XVI, § 51. The object of this provision is to "protect the house and the farm, tan yard, mill, gin, or whatever had been used in connection with the residence to make a support for the family." *Houston & Great N.R.R. Co. v. Winter*, 44 Tex. 597 (1876); *see also Foust v. Sanger*, 13 Tex.Civ.App. 410, 35 S.W. 404, 405 (1896) ("[b]ountiful provision has been made for the protection of every family in its right

to a homestead; the object being, not only to protect a place where the family has a shelter and a home, but a place where the head of it can have the opportunity afforded to make a livelihood and support for those under his care."). Thus the protection Texas affords to homesteads is two-pronged: to protect the residence and to protect the livelihood of the head of the household. This dual purpose was early made clear by Judge Stayton:

> The exemption for rural homestead gives not only the home or residence of the family, but not exceeding two hundred acres of land in one or more parcels, *enough to enable the head of the family thereon to exercise his calling or business, agricultural or other, and thereby to provide a support for his family.* The letter and spirit of the constitution harmonizes the urban exemption with that before its adoption given only to the rural, and exempts to each alike a place not only for the shelter of the family, *but also a place where its head may exercise his calling or business,* and thereby provide subsistence for the family dependent upon him
>
> . . . .

*Miller v. Menke's Widow & Heirs,* 56 Tex. 539 (1882) (emphasis added). In the same year the supreme court defined what qualifies as use "for the purposes of a home." "There must be some act done which will evince an intention to use it as a home or, if separated from the tract upon which the home of the family stands, to use it in some way, in connection with the home place, for the comfort, convenience, or support of the family, *or as a place of business* for the head of the family." *Brooks v. Chatham,* 57 Tex. 31 (Tex.1882) (emphasis added). That every family be able to support itself on the homestead "was the cherished object of the framers of the Constitution . . . ." *Winter,* 44 Tex. 597. The Fifth Circuit, early in the last century

concluded that "[t]he law as declared in the Constitution and statutes does not undertake to place any limitation on how the land may be used, other than that it is to be the homestead." *Woodward v. Sanger Bros.,* 246 F. 777, 781 (5th Cir.1917).

Traditionally, rural property in Texas has always had a "business" component, that is, Texans used rural land to raise crops and livestock in order to support the family that lived on it. *See In re Webb,* 263 B.R. 788, 792 (Bankr.W.D.Tex.2001); *In re Mitchell,* 132 B.R. 553, 559 (Bankr. W.D.Tex.1991). The *Bradley* court acknowledged that a rural homestead does not lose its exemption when it is used to support the family by agricultural pursuits. 960 F.2d at 508. Case law indicates that support for the family can also come from such non-agricultural enterprises as collection of oil and gas royalties, *Riley v. Riley,* 972 S.W.2d 149, 154 (Tex.App.Texarkana 1998, no writ), renting contiguous portions of the property, *Youngblood v. Youngblood,* 124 Tex. 184, 76 S.W.2d 759, 761 (Tex. Comm'n App.1934, opinion adopted), the operation of a gin and tan yard, *Winter,* 44 Tex. 597, and the maintenance of a law office in the home, *Mitchell,* 132 B.R. at 556. The constitution and statutes place no limitation on the use of rural property, other than it must be used as a home. It may also be used to support the family, but again, no limitations are placed on the means used for that support. *Mitchell,* 132 B.R. at 559. Thus, it follows that establishing facilities for campgrounds and temporarily renting camping sites is merely another means of "working the land" to support the family. *See Youngblood,* 76 S.W.2d at 760–61 (temporarily renting contiguous parts of the tract on which the home is located does not forfeit the homestead exemption).

In addition to *Bradley,* the bankruptcy court relied on the language of TEX. PROP.

CODE § 41.002. Under § 41.002(a), an urban homestead may be a residential or a business homestead. In contrast, the statutory rural homestead exemption found in § 41.002(b) does not include a business component, but allows a family or single adult to claim up to 200 or 100 acres of property, respectively, "for the purposes of a rural home." From this it might be supposed that a rural homestead does not encompass a business homestead. Rather, the opposite is true; a rural homestead was always regarded as a place for the claimant to pursue a business in support of the family.

> Undoubtedly the purpose of the homestead exemption is to shield from creditors a place for the family to live and a place for the head of the family to exercise his calling or business to enable him to support the family. *It was contemplated that a rural homestead would serve both purposes, and, therefore, no separate provision was made for a residence and a business homestead,* although it was permitted that the homestead consist of separate and detached parts, if used for the purposes of a home.

*Thomas v. Creager,* 107 S.W.2d 705, 709 (Tex.Civ.App.Eastland 1937, writ dismissed) (emphasis added). This is also made clear in Judge Stayton's opinion quoted above—the rural homestead exemption has always integrated both a place for the family to live and a place to pursue its calling or business, "agricultural *or other* ...." *Miller,* 56 Tex. 539 (emphasis added). Judge Stayton also concluded that the business component was added to the urban exemption to harmonize it with the business component *already included* in the rural exemption. *Id.* Thus a business component, which the Texas Constitution has never limited to agricultural pursuits, has always been subsumed within the definition of a rural homestead.

The case the *Bradley* court relied on in footnote 6, *O'Brien v. Woeltz,* 94 Tex. 148, 58 S.W. 943 (1900), does not stand for the proposition cited. *O'Brien* dealt with an urban homestead, not a rural one. Further, *O'Brien* did not discuss forfeiture of the homestead exemption, but rather addressed when a claimant can acquire a new business homestead by moving his business to a new location. The supreme court held that a claimant, while occupying a business homestead in one location, cannot establish a business homestead in a second location by his mere intention to locate his business there in the future. *Id.,* 58 S.W. at 945. *O'Brien* says nothing about forfeiting the homestead protection on the part of a rural homestead used to operate a non-agricultural business.

Furthermore, while this Court is bound to follow Circuit precedent, it is not bound to follow the statement in footnote 6 of *Bradley* because it is dictum. *Bradley* did not deal with the operation of a non-agricultural business on a rural homestead, and elimination of the footnote would not impair the analysis used to reach the conclusion that the debtor in that case was entitled to a homestead exemption. For the foregoing reasons, this Court determines that *Bradley's* footnote 6 is not reliable or controlling authority. Thus, the Court must conclude that Perry did not forfeit his homestead exemption by using his rural property to operate a campground business to support his family.

### Order

In summary, Perry's Issue No. 4 (whether the bankruptcy court properly permitted the Dearings to amend their objections) is OVERRULED. Perry's Issue No. 5 (whether the court erred in permitting the Bank to file an untimely objection) is SUSTAINED. Perry's Issues Nos. 1–3 (pertaining to the homestead

nature of the 85 acres) are SUSTAINED. The Dearings' cross-point (asserting error in the bankruptcy's holding that the 1.34–acre tract is exempt) is OVERRULED. The order of the bankruptcy court is AFFIRMED insofar as it recognizes that the 1.34–acre tract is exempt, and REVERSED in all other respects. The Dearings' objections to the homestead exemption asserted by Perry in the entire 85–acre tract are OVERRULED, and the Bank's objections are STRUCK.