## HENRY v. BOEDKER.†

(Court of Civil Appeals of Texas. San Antonio. Nov. 22, 1911. Rehearing Denied Dec. 20, 1911.)

1. ATTORNEY AND CLIENT (§ 117*)—COMPENSATION—APPLICATION BY ATTORNEY.

An attorney having a claim against a client on notes may apply money received by him on the client's account to the payment of such notes.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 232, 234, 235; Dec. Dig. § 117.*]

2. HOMESTEAD (§ 211*)—ENFORCEMENT—PROCEEDS OF SALE—TIME FOR MAKING CLAIM.

Sayles' Ann. Civ. St. 1897, art. 2396, which provides that the proceeds of a voluntary sale of a homestead shall not be subject to garnishment or forced sale within six months after such sale, does not require that a suit to enforce the right conferred by the statute shall be instituted within six months.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. § 392; Dec. Dig. § 211.*]

3. HOMESTEAD (§ 77*) — LIABILITIES ENFORCEABLE AGAINST HOMESTEAD — NOTES — STATUTORY PROVISIONS.

Under Sayles' Ann. Civ. St. 1897, art. 2396, which provides that the proceeds of a voluntary sale of a homestead shall not be subject to garnishment or forced sale within six months after such sale, an attorney who has sold his client's homestead rights for a consideration partly in cash cannot, without his consent, subject the proceeds in his hands to an extinguishment of the client's notes held by himself.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. § 109; Dec. Dig. § 77.*]

Appeal from District Court, Bexar County; J. L. Camp, Judge.

Action by S. A. Boedker against E. D. Henry. Judgment for plaintiff, and defendant appeals. Affirmed.

Webb & Goeth, for appellant. Swearingen & Tayloe and O. M. Fitzhugh, for appellee.

COBBS, J. This was a suit instituted by S. A. Boedker, appellee, who alleged that she was the head of a family, consisting of herself and three children, and was the owner of certain real estate in San Antonio, upon which she resided as a homestead; that the said property was sold by her, through E. D. Henry, a practicing lawyer, for the consideration in cash of $2,683 and the assumption by W. L. Barker, the purchaser, of an incumbrance thereupon of $4,817; that at the time of the sale she was temporarily in Boulder, Colo., and the property was sold and deed forwarded to her by said Henry for her execution, which deed she did execute and return to the said Henry; that the said Henry negotiated said sale and collected the money for her, and, after paying various sums of money and applying the sum of $1,501, he sent her his check for $32.50, the balance due.

The petition also alleged that on the 15th of April, 7th of August, 24th of June, and 27th of April, 1907, she executed to appellant her four promissory notes, each for the sum of $400, except one, which was for the sum of $75, payable to the appellant, bearing interest at the rate of 8 per cent. per annum from date.

Appellant, Henry, answered, and alleged that the appellee's property was about to be sold by foreclosure proceedings in favor of the Bexar Building & Loan Association, and that $2,683 was appellee's equity, and that she would not have received anything for her equity in said property, had it not been for said sale; that at the time he received the money she was indebted to him in the sum of $1,051 for the four promissory notes, and that she was hopelessly insolvent; that he would not have received anything for his said notes, and he pleaded the said notes as an offset, and further pleaded that more than six months had elapsed between the time when he received the money from Barker and the time he applied the proceeds to the amount due him before the institution of the suit, and if she could have recovered the money under the exemption law she had thereby waived the same by her delay.

This case was tried before the court without a jury, and no findings of fact or conclusions of law were requested, but the case comes up with a full statement of facts, and, so far as the facts are concerned, the finding upon all issues must be in favor of the judgment of the court.

It is shown that at the conclusion of the sale appellant, on the 26th day of July, 1909, wrote a letter to appellee, in which he stated, among other things:

"You received in cash from the sale of your property $2,683.00, out of which we paid the following:

| | |
|---|---:|
| Taxes | $ 179 50 |
| Int. on your indebtedness to the Building & Loan Association | 426 50 |
| Commission to the agents for the sale of the property | 375 00 |
| Abstract of judgment for the sum of | 125 00 |
| To me on my notes and Int. to date | 1,501 00 |
| Making a total of | $2,607 00 |

—leaving a balance coming to you of $76. * * * There was the sum of $54.60 coming back to you from the unexpired premium of insurance, making a total coming to you from the insurance and from the property of $130.60. I have paid out for you for the children's tickets and otherwise, the following amounts:

| | |
|---|---:|
| To Henrie, for shoes | $ 3 50 |
| Money for the meals while on train | 11 50 |
| To tickets and berths | 72 00 |
| New Process Laundry | 1 10 |
| To Henrie, for shoes, etc | 10 00 |
| Making a total of | $98 10 |

—expense for the children, leaving a balance of $32.50 coming to you, and I herewith en-

close you my check for the sum of $32.50, being the balance due you after paying all expenses, debts, etc. I herewith enclose you one note for $75.00, executed by you to me, and three notes of $400.00 each, executed by you in my favor, each of these notes is duly canceled."

Upon the receipt of that letter, August 30, 1909, appellee wrote the appellant, protesting vigorously against his applying the money to the payment of the notes she owed him, stating that it was her homestead property, and that he had no right to apply it without her consent, and she continued ever afterwards to repudiate the acts of Henry in making the application.

[1] The appellant seeks to have the judgment below reversed and remanded for another trial, practically upon two propositions. The first proposition, under a proper assignment of error, is to the effect that E. D. Henry had the right to appropriate the $1,501 to the payment of the promissory notes held by him against Mrs. Boedker. We regard that the proposition contended for, in respect to the right of offset, is settled in favor of appellant by the case of Blair v. Blanton et al., 54 S. W. 322, and, were that the only question involved in the case, we would be inclined to sustain this assignment, and render.

[2] A more difficult question, however, is presented and involved in the application of this money to appellant's debt without the consent of appellee, and that is: Can he, without her consent, in this way subject the proceeds of her homestead to the extinguishment of her unsecured debt? It is provided in Sayles' Ann. Civ. St. 1897, art. 2396, among other things: "The proceeds of a voluntary sale of the homestead shall not be subject to garnishment or forced sale within six months after such sale." The evidence in this case sufficiently and directly supports the judgment of the court that this property was the homestead property of the appellee, who was the head of a family, the mother of three children; and the fact that it was a homestead is not denied by defendant, as he had full knowledge of the whole matter and of all Mrs. Boedker's business, having purchased the property for her. Appellant undertakes to avoid the effect of this plain provision of our law by contending that the statute requires the institution of the suit within six months after the date of the appropriation. We can see no way in which to give it that construction, since, as the court below found by its judgment, it was unlawful for Henry to appropriate that money to his debt. The appropriation was made within the six months. In other words, it is meant by the statute that for a period of six months the money cannot be seized, but it was not thereby meant that the suit should be instituted within six months. That would be controlled by the statute of limitations in respect to the institution of suits generally.

[3] Our statutes intended to and did make the proceeds of the homestead for six months a sacred fund for the benefit of the family, and never intended that the same should be taken by any process known to the law. On the date when Henry applied this money as a credit, he could not by any legal process have reached this fund and subjected it to the payment of his debt, without the consent of appellee. Had he placed it in the bank to her credit, he could not have garnished it. And it makes no difference whether he had placed it in the hands of some other agent or in her own hands; it was sacred from any process; and by his wrongful act in appropriating the money to his use he cannot be permitted to justify the appropriation of this sacred fund in his hands, being her agent, any more than he could in any other way. To allow him to do this would be allowing him to indirectly seize a homestead fund that was exempt, when he could not do it by any direct proceeding.

In the case of Howard v. Tandy, 79 Tex. 453, 15 S. W. 578, the court said: "To permit the money in the hands of the sheriff, which had been realized by Tandy from his judgment against Low & Low et al., for damages resulting from their seizure and conversion of his exempt property, to be applied to the satisfaction of an execution held by the same officer against Tandy and in favor of said Low & Low, as the appellants contend should have been done, would in effect render nugatory the exemption law of our state, relating to personal property. It would also, we think, operate practically to make a suit, resorted to to secure the benefit and protection of the exemption law by one whose personal property had been illegally seized, result in subjecting the proceeds of such suit to execution, thus defeating the very purpose of the suit itself, and indirectly reaching the property which the law says shall not by judicial process be made subject to the payment of debt."

As we view the case, Henry, because he became possessed of the homestead fund through the medium of his trust relation, had no more right to appropriate the money in the manner in which it was done than he would have had to seize it under some proceeding instituted for that purpose; and, as said supra, it would, it seems, render nugatory the homestead law, by allowing him, perforce of his advantage, to hold that money, as much so as to secure it through any judicial proceeding.

We can see no error in the judgment of the court, which we find fully sustained by the facts, and the judgment is therefore affirmed.