Reversed and Remanded; Petition for Writ of Mandamus Denied; and
Opinion filed May 17, 2011.

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-09-01045-CV

___________________

 

Leticia London, Appellant

 

V.

 

Jeffrey London, Appellee



 



 

On
Appeal from the 308th District Court

Harris County,
Texas



Trial Court Cause No. 1995-51934

 



 

 

___________________

 

NO. 14-09-01063-CV

___________________

 

IN RE Leticia London, Relator

 



 



 

ORIGINAL
PROCEEDING

WRIT OF MANDAMUS

308th District
Court

Harris County,
Texas



Trial Court Cause No. 1995-51934



 

 

 

OPINION

            A judgment creditor generally cannot
foreclose on a homestead to satisfy a debt unrelated to the home, and if a
homestead claimant sells the residence, the proceeds are exempt from attachment
and execution for six months as a matter of state law.  In this case, Leticia
London’s judgment creditor asked the trial court to appoint a receiver and
order that if she sold her home, she must turn the sales proceeds over to the
receiver.  The trial court granted the creditor’s motion and denied Leticia’s
request for disbursement of some of the sales proceeds to her.  Leticia challenged
the turnover order through both an appeal and a petition for writ of mandamus; in
the latter, she also asked us to compel the trial court to disburse the sales
proceeds to her.  We consolidated the two matters, and now hold that the trial
court erred in appointing a receiver and in ordering the turnover of Leticia’s
homestead-sale proceeds.  We therefore reverse and remand with instructions to
the trial court to order the receiver to disburse the sales proceeds to
Leticia.  

I.  Factual and Procedural History

            Jeffrey and Leticia divorced in 1995, and
Jeffrey was ordered to pay Leticia child support of $1,500 per month for their
two children.  In 2001, the trial court increased Jeffrey’s monthly
child-support obligation to $4,500 and awarded Leticia her attorney’s fees as
child support.  Jeffrey appealed, and we reversed those portions of the trial
court’s order.  London v. London, 94 S.W.3d 139, 151 (Tex. App.—Houston
[14th Dist.] 2002, no pet.) (“London I”).  

            Leticia immediately filed another motion
for modification, and Jeffrey counterclaimed to recoup the $86,250 he paid as
increased child support while the earlier appeal was pending.  London v.
London, 192 S.W.3d 6, 10 (Tex. App.—Houston [14th Dist.] 2005, pet. denied)
(“London II”).  The trial court ruled in Leticia’s favor, increased Jeffrey’s
monthly support obligation from $1,500 to $3,000, and awarded Leticia $6,000 in
retroactive child support.  The trial court also denied Jeffrey’s recoupment
claim and awarded Leticia $12,000 for attorney’s fees in the nature of child
support.  Id.  Jeffrey appealed, and again we reversed.  Id. at
19–20.  We rendered judgment against Leticia for the increased child support
Jeffrey paid while his two successful appeals were pending.  

            Jeffrey still had not been paid when he
learned in 2009 that Leticia was attempting to sell her homestead and had
specified that the title company pay part of the proceeds to the creditors she
identified in the closing statement.  Before the closing, Jeffrey asked the
trial court to appoint a receiver and order Leticia to deliver the proceeds
from any sale to the receiver.  On December 1, 2009, the trial court signed an
“Order Granting Turnover and Appointing Receiver.”  In the order, the trial
court appointed and authorized a receiver to seize Leticia’s non-exempt assets
and pay the proceeds to Jeffrey to the extent necessary to satisfy the
judgment.  The same day, however, the trial court also signed an order
entitled, “Final Judgment on Application for Turnover and Appointment of a
Receiver Pursuant to Chapter 31 of the Texas Civil Practice and Remedies
Code.”  In this order, the trial court again appointed the same receiver and ordered
that if Leticia sold her homestead, she was to turn over the sales proceeds to
the receiver.  

            While expressly reserving her right to
appeal, Leticia moved for the disbursement of proceeds to pay some of her
creditors.  The trial court denied most of the requested relief, but ordered
that if Leticia presented bills to the receiver to substantiate her debts, then
the receiver could pay $1,874.00 to Leticia’s landlord for past-due rent and late
fees, $245.99 to her electricity provider for her overdue electric bill, and
$109.46 to another utility company for her outstanding water bill.  The trial
court refused to order the receiver to pay $4,877.71 to the Internal Revenue
Service for Leticia’s back taxes; $1,056.48 to the bank financing her
automobile loan for past-due payments, and $5,000.00 to her attorney for legal
fees.  

            In partial compliance with the trial
court’s order, Leticia delivered a portion of the proceeds to the receiver.[1]  She appealed the trial
court’s order appointing the receiver and requiring her to deliver to the
receiver the proceeds from the sale of her homestead, and filed a petition for
a writ of mandamus asking us to compel the trial court to order the receiver to
disburse the sale proceeds directly to her.  We consolidated the two matters.  

II.  Standard of Review

            We begin our review with Leticia’s appeal
of the order appointing a receiver and requiring her to deliver the proceeds
from the sale of her home to him.  As we have previously stated, “receivership
is a drastic remedy, to be used sparingly in the context of private litigation.” 
Covington Knox, Inc. v. State, 577 S.W.2d 323, 326 (Tex. Civ.
App.—Houston [14th Dist.] 1979, no writ).  It nevertheless is a matter committed
to the trial court’s discretion, and we will not disturb that decision absent a
clear abuse of discretion.  Id. at 325.  We similarly review turnover
orders for abuse of discretion.  Barrera v. State, 130 S.W.3d 253, 261
(Tex. App.—Houston [14th Dist.] 2004, no pet.) (citing Beaumont Bank, N.A.
v. Buller, 806 S.W.2d 223, 226 (Tex. 1991)).

III.  Analysis

            Before turning to the merits of Leticia’s
appeal, we first must address Jeffrey’s contention that Leticia waived her
complaint because she did not appeal the trial court’s “Order Granting Turnover
and Appointing Receiver.”  Instead, she appealed only the “Final Judgment on
Application for Turnover and Appointment of a Receiver Pursuant to Chapter 31
of the Texas Civil Practice and Remedies Code.”  The two orders overlap, and
the same judge signed both on the same day.  In each, the trial court appointed
Henry V. Radoff as the receiver.  Before it was signed by the trial court, the
ruling referred to as an “order” was filed as a proposed order on October 19,
2009, but the order referred to as the “final judgment” was filed only on
December 1, 2009.  After reviewing the transcript of the December 1, 2009
hearing, we conclude that the order denominated as the “final judgment”
supersedes the proposed “order” signed the same day.  

            At the hearing, the trial court asked for
the name of the person who would serve as the receiver, and R. Dean Irwin, one
of Jeffrey’s attorneys, stated that the name was “in the proposed order that
now it has to be tweaked based on your ruling . . . .” 
Scott Rothenberg, Jeffrey’s other attorney, told the trial court that he could
have the order drafted within an hour and a half, and then deliver it to the
trial court by 2:00 p.m.  The trial court instructed the attorneys to return at
that time for entry of judgment.  When the hearing reconvened, the trial court
reviewed the language of the “final judgment” with the attorneys, instructed
Jeffrey’s attorney to make particular changes, and Rothenberg stated, “We can
interlineate that.”  The order proposed in October 2009 does not contain this
language, through interlineations or otherwise.  The order filed on December 1,
2009 and denominated as the “final judgment” does contain the trial court’s
modifications, and they appear as interlineations just as discussed on the
record. 

            Based on our review of the record, we
conclude that the “final judgment” effectively supersedes the earlier-proposed
order, although both were signed the same day.  Because Leticia did not waive
the issues she presents on appeal simply because she appealed only the “final
judgment,” we turn now to the merits of her arguments.

A.        Governing Law  

            The “turnover” statute is a procedural
device used by judgment creditors to reach a debtor’s non-exempt assets that
otherwise would be difficult to reach by attachment or levy through ordinary
legal process.  Tex. Civ. Prac. &
Rem. Code § 31.002(a) (West 2008).  Under the turnover statute, the
trial court can appoint a receiver to take possession of the debtor’s
non-exempt assets, sell them, and pay the debtor’s creditors with the
proceeds.  Id. at § 31.002(b)(3).  But assets that are exempt from
attachment, execution, or seizure are not subject to the turnover statute.  See
id. at § 31.002(a)(2), (b)(1), and (b)(3).  

            With certain exceptions inapplicable
here, a homestead is exempt from seizure to satisfy creditors’ claims.  See Tex. Prop. Code Ann. § 41.001(a), (b)
(West Supp. 2009).[2] 
And if a homestead claimant sells her home, the sales proceeds similarly are
exempt from seizure for six months.  See id. § 41.001(c).  Because
of this exemption, the sales proceeds are beyond the reach of the turnover
statute for six months from the date of sale.  See Tex. Civ. Prac. & Rem. Code
§ 31.002(a)(2) (judgment creditor is entitled to the court’s aid to reach
property, including present or future rights to property, that “is not exempt
from attachment, execution, or seizure”); id. § 31.002(b)(1) (court may
“order the judgment debtor to turn over nonexempt property”); id. §
31.002(b)(3) (court may appoint a receiver authorized “to take possession of
the nonexempt property”); id. § 31.002(f) (court may not enter or enforce
an order “that requires the turnover of the proceeds of, or the disbursement
of, property exempt under any statute”); § 31.002(h) (court may enter or
enforce an order “that requires the turnover of nonexempt property”).  

            On its face, then, the final judgment demonstrates
that the trial court violated the turnover statute by appointing a receiver to
hold the proceeds of the homestead’s planned sale and by ordering Leticia to
turn over the sales proceeds to the receiver.  Because these actions violated
the turnover statute, the trial court abused its discretion in issuing such an
order.  See In re Gen. Elec. Co., 271 S.W.3d 681, 694 (Tex. 2008) (trial
court abuses its discretion by issuing an order that violates a statute). 

            Jeffrey agrees “that in the absence of
some type of waiver,” the proceeds from the sale of a homestead are exempt
assets.  He contends, however, in specifying that the title company was to pay
some of the proceeds of the sale to the creditors Leticia identified and in the
amounts she specified, Leticia waived the statutory exemption.  

B.        Absence of Waiver

            Jeffrey
contends that the statutory exemption applies only to those proceeds the debtor
intends to apply toward the purchase of a new homestead within six months of
the original homestead’s sale.  He therefore maintains that because Leticia
expressed an intention to use some of the sale proceeds to pay for debts and
living expenses rather than to buy a new homestead, she waived the exemption
over that portion of the proceeds.  Jeffrey argues that in issuing the turnover
over, the trial court balanced Leticia’s right to protect the homestead-sale proceeds
from turnover for six months against Jeffrey’s “present right to
preserve the homestead proceeds for distribution to him conditioned upon
Leticia’s failure to purchase a substitute homestead within the statutory six
(6) month period . . . .”  He additionally argues that within the six months
after the sale, Leticia is not free to use these proceeds to pay other
creditors.  

            Each of these assertions is incorrect.  Jeffrey
did not have the right to preserve Leticia’s homestead-sale proceeds, and Leticia
did have right to use the proceeds to pay other creditors.  In arguing to the
contrary, Jeffrey relies on federal bankruptcy cases that he contends support
his position that Leticia waived the exemption.  See, e.g., Zibman v.
Tow (In re Zibman), 268 F.3d 298, 304 (5th Cir. 2001) (explaining
that the exemption applicable to homestead-sale proceeds expires six months
after the date of sale, and is not transformed into a permanent exemption just
because it was in effect at the time the claimant petitioned for bankruptcy
protection); Hill v. Jones (In re Jones), 327 B.R. 297, 302–03
(S.D. Tex. 2005) (denying the petitioner the requested discharge in bankruptcy
because shortly before filing, the petitioner gave $22,000 of his
homestead-sale proceeds to his fiancé to buy a truck for his use, but titled in
her name solely to protect it from the claims of petitioner’s creditors); Brown
v. Kaba (In re Kaba), Ch. 7 Case No. 05-92263-DML-7, Adv. No.
06-04107, 2007 WL 1556842 (N.D. Tex. May 25, 2007) (upholding bankruptcy
trustee’s objection to a transfer in which the debtors spent the bulk of their
homestead-sale proceeds to satisfy an antecedent debt to their son, then filed
bankruptcy claiming only federal exemptions, rather than the state-law
exemption for proceeds from the sale of a homestead).[3]  We do not find his
arguments persuasive.  

            Texas state courts are not bound by the
decisions of federal courts other than the United States Supreme Court.  Penrod
Drilling Corp. v. Williams, 868 S.W.2d 294, 296 (Tex. 1993).  And unlike
the federal cases on which Jeffrey bases his argument, this is not a bankruptcy
case, and we are not here presented with an attempt to defraud a creditor.[4]  When a debtor
files for bankruptcy protection, federal bankruptcy law limits a debtor’s
asset-management and debt-payment choices, but those limitations are inapplicable
here.  We instead are concerned with the validity of a turnover order.  In the
cases on which Jeffrey relies, no court held that a judgment creditor without a
secured interest in the property could use the turnover statute to sequester exempt
homestead-sale proceeds.   

            Moreover, none of the actual holdings of
the cases on which Jeffrey relies requires the result he advocates.  For
example, the exemption expires six months after the date of sale; thus, as the
court explained in Zibman, proceeds that the debtor chose not to spend
during that time lose their exempt status.  Zibman, 268 F.3d at
304.  That remains true regardless of how the homestead claimant spent any of
the proceeds during the exemption period.  If, as in Jones, a debtor
chooses to give away the sales proceeds or use them to make new purchases, then
the debtor remains obligated to pay his preexisting debts just as he was before
he sold the homestead.  See Jones, 327 B.R. at 302–03.  The same is true
here: if Leticia chose to spend all of the proceeds from the sale, then
regardless of whether she spent them to buy a new homestead, to pay preexisting
debts, to pay living expenses, or for something else, her debt to Jeffrey would
be undiminished.  Finally, as in Kaba, a homestead claimant may choose
not to rely on the exemption provided by state law.  See Kaba, 2007 WL
1556842 , at *1; see also Solar Applications Eng’g, Inc. v. T.A. Operating
Corp., 327 S.W.3d 104, 112 (Tex. 2010) (“Parties are free, of course, to
contract out of statutory default rules such as those established by the lien
statutes and may even contractually waive constitutional rights.”).  Leticia,
however, has asserted her right to the statutory exemption.  

            Although the holdings of Zibman, Jones,
and Kaba do not support Jeffrey’s position, Jeffrey relies on dicta in
those cases that the purpose of the six-month exemption is to permit homeowners
to use the proceeds from the sale of one homestead to purchase another
homestead.  He then reasons that a homestead claimant who intends to use some
of the proceeds for a purpose other than the purchase of another homestead
waives the exemption.  The text of the statute, however, does not contain
language limiting the exemption to those instances in which the homestead
claimant plans to buy another home.  The statutory exemption for homestead-sale
proceeds instead provides in its entirety, “The homestead claimant’s proceeds
of a sale of a homestead are not subject to seizure for a creditor’s claim for
six months after the date of sale.”  Tex.
Prop. Code Ann. § 41.001(c).  See also MCI Sales & Serv.
Inc. v. Hinton, 329 S.W.3d 475, 501 (Tex. 2010) (“[W]e consider the
statute’s plain and common meaning, and do not ‘look to extraneous matters for
an intent the statute does not state.’” (quoting Nat’l Liab. & Fire Ins.
Co. v. Allen, 15 S.W.3d 525, 527 (Tex. 2000))).  Thus, the statute limits
the options available to creditors, not the options available to homestead
claimants.  Cf. Hardeman v. Judge, 931 S.W.2d 716, 719 (Tex. App.—Fort
Worth 1996, writ denied) (“A property owner, of course, may always elect to
sell their property to pay debts, even though the debt could not have been
enforced against the homestead property.”).  

            Our reading of the statute is supported
by case law, as well as by the statute’s text.  See Henry v. Boedker,
141 S.W. 811 (Tex. Civ. App.—San Antonio 1911, writ ref’d).  In that case,
Henry, an attorney, sold his client’s homestead at her instruction, but applied
the proceeds without her consent to the debt she owed him.  The client
successfully sued for the return of the proceeds, and in affirming the
judgment, the court stated as follows:

Our statutes intended to and did make the proceeds of the
homestead for six months a sacred fund for the benefit of the family, and never
intended that the same should be taken by any process known to the law.  On the
date when Henry applied this money as a credit, he could not by any legal
process have reached this fund and subjected it to the payment of his debt,
without the consent of appellee.  Had he placed it in the bank to her credit,
he could not have garnished it.  And it makes no difference whether he had
placed it in the hands of some other agent or in her own hands; it was sacred
from any process; and by his wrongful act in appropriating the money to his use
he cannot be permitted to justify the appropriation of this sacred
fund . . . .  To allow him to do this would be allowing him
to indirectly seize a homestead fund that was exempt, when he could not do it
by any direct proceeding.

Id. at 812; see also Tex. Civ. Prac. & Rem. Code §
31.002(f) (“A court may not enter or enforce an order under this section that
requires the turnover of the proceeds of . . . property exempt under any
statute.”).  

            There are instances in which a homestead
claimant’s intentions may be relevant in determining whether proceeds from the
sale of property are exempt.  For example, funds the debtor receives from the
sale are not homestead-sale proceeds if, before the sale, the property ceased
to be the claimant’s homestead due to the claimant’s “total abandonment [of the
property] with an intention not to return and claim the exemption.”  See
Rancho Oil Co. v. Powell, 142 Tex. 63, 69, 175 S.W.2d 960, 963 (1943).  Here,
however, Jeffrey does not dispute that the property was Leticia’s homestead at
the time of sale.  See Ingram v. Summers, 29 S.W.2d 447, 450 (Tex. Civ.
App.—El Paso 1930, writ dism’d w.o.j.) (homestead claimant does not waive the
exemption applicable to the proceeds of a future sale if the real property is
claimed as a homestead up to the time of its sale).

            We therefore conclude that Leticia did
not waive the exemption by expressing her intention to use some of the proceeds
for purposes other than purchasing another homestead.  We sustain the sole
issue presented in Leticia’s appeal.

C.        Remedy

            Leticia asks that if we reverse the trial
court’s turnover order, we remand with instructions to the trial court that the
six-month statutory exemption does not begin to run until we issue our mandate
or until the proceeds are released to her, whichever is later.  We agree that
this remedy is both available and appropriate in this case.

            The homestead exemptions must “be
liberally construed to effectuate their beneficent purposes.”  Wallace v.
First Nat’l Bank, 120 Tex. 92, 102, 35 S.W.2d 1036, 1039 (1931).  Thus, when
homestead-sale proceeds have been withheld from the homestead claimant, courts
may equitably toll the six-months’ statutory exemption to prevent the claimant
from being irrevocably deprived of the exemption’s benefits.  See Jones v. Maroney,
619 S.W.2d 296, 297–98 (Tex. Civ. App.—Houston [1st Dist.] 1981, no writ)
(“[T]he purpose for which the statute was enacted would be destroyed if the
court would not toll the statute during the period of time the proceeds were involved
in court litigation.”).  

            Here, an unsecured creditor has caused
the homestead-sale proceeds to be wrongfully withheld from the judgment debtor
in an attempt to accomplish the very thing the statute forbids—payment of his
debt from homestead-sale proceeds.  See Walston v. Walston, 971 S.W.2d
687, 695 (Tex. App.—Houston [14th Dist.] 1998, pet. denied) (“a party cannot be
required to pay unsecured creditors from homestead proceeds”); see also In
re Bading, 376 B.R. 143, 149–50 (W.D. Tex. 2007) (“The odd and inequitable
result [the creditor] seeks to achieve—destroying the debtor’s homestead rights
by simply being obstructionist—is wholly at odds with the salutary purpose of
the homestead exemption.”).  We therefore conclude that the appropriate remedy
is to toll the exemption as Leticia requested in her appeal.

D.        Petition
for Writ of Mandamus

            Appellate
relief is available if the trial court abused its discretion in issuing the
turnover order and the error was harmful; mandamus, on the other hand, is
appropriate only when the trial court has clearly abused its discretion and the
relator has no adequate remedy by appeal.  See In re Prudential Ins. Co. of
Am., 148 S.W.3d 124, 135–36 (Tex. 2004).  In her petition for writ of
mandamus, Leticia acknowledged that the trial court’s turnover order was
appealable, but she argued that the trial court’s order is void, and thus, she
was not required to show that she lacked an adequate remedy by appeal.  We
conclude, however, that the order was erroneous rather than void.  See
Caulley v. Caulley, 806 S.W.2d 795, 798 (Tex. 1991) (addressing turnover
order that violated a statute as an erroneous order rather than a void order); see
also Mapco, Inc. v. Forrest, 795 S.W.2d 700, 703 (Tex. 1990) (orig. proceeding
) (per curiam) (explaining that a court’s action is not void merely because it
is “contrary to a statute, constitutional provision or rule of civil or
appellate procedure”); Browning v. Placke, 698 S.W.2d 362, 363 (Tex.
1985) (orig. proceeding) (per curiam) (“All errors other than jurisdictional
deficiencies render the judgment merely
voidable . . . .”).  And in disposing of her appeal, we
have granted her all of the relief she requested for the erroneous order.  We
therefore deny Leticia’s petition for writ of mandamus.  

IV.  Conclusion

            Because
the trial court violated the turnover statute by appointing a receiver to hold
exempt homestead-sale proceeds and ordering Leticia London to deliver exempt
property to the receiver, we conclude that the trial court abused its
discretion.  We sustain Leticia’s sole issue on appeal, reverse the trial
court’s order, and remand with instructions that the proceeds previously turned
over to the receiver are to be returned to Leticia, where they will retain the
character of exempt homestead-sale proceeds for six months from the later 

 

of (a) the date we
issue our mandate, or (b) the date the proceeds are released to her.  We deny
Leticia’s petition for writ of mandamus.

 

 

                                                                                    

                                                                        /s/        Tracy
Christopher

                                                                                    Justice

 

 

 

Panel consists of Chief
Justice Hedges and Justices Frost and Christopher.

 









[1] The title company paid
some of Leticia’s creditors, and the trial court ordered Leticia to contact the
creditors, convey the trial court’s turnover order, and request that the
payments be turned over to the receiver.  The extent to which Leticia may have
complied with the order and the extent to which her creditors cooperated—for
they were not ordered to return the funds—is not shown in the record.  But
cf. Beaumont Bank, N.A. v. Buller, 806 S.W.2d 223, 227 (Tex. 1991)
(explaining that the turnover statute does not apply to nonjudgment debtors,
and if the asset at issue is cash, then the trial court can only order the
debtor to turn over amounts that are within her possession and control, and not
cash that has been spent).





[2] Exceptions are set forth
in the state constitution and the Texas Property Code.  See Tex. Const. art. XVI, § 50; Tex. Prop. Code Ann. § 41.001(b). 





[3] See Zibman, 268
F.3d at 302 (“The debtor may have certain property exempted from the bankruptcy
estate by electing to take advantage of either the federal exemption provisions
in the Bankruptcy Code or those provided under state law.”).  In Kaba,
the debtors elected to use the federal exemptions, not six-month exemption for
homestead-sale proceeds available under state law.  See Kaba, 2007 WL
1556842, at *1.





[4] But cf. Long
Bell Lumber Co. v. Miller, 240 S.W.2d 405 (Tex. App.—Amarillo 1951, no
writ) (explaining, in a case outside the bankruptcy context, that the homestead
exemption may not be lost by fraudulent acts done with the intent to defeat a
creditor).