**Leticia LONDON, Appellant,**

v.

**Jeffrey LONDON, Appellee.**

**In re Leticia London, Relator.**

**Nos. 14–09–01045–CV, 14–09–01063–CV.**

Court of Appeals of Texas,
Houston (14th Dist.).

May 17, 2011.

Rehearing Overruled July 14, 2011.

See also, 94 S.W.3d 139.

Shawn Russel Casey, Houston, for appellant.

Scott Rothenberg, Houston, for appellee.

Panel consists of Chief Justice HEDGES and Justices FROST and CHRISTOPHER.

**OPINION**

TRACY CHRISTOPHER, Justice.

A judgment creditor generally cannot foreclose on a homestead to satisfy a debt unrelated to the home, and if a homestead claimant sells the residence, the proceeds are exempt from attachment and execution for six months as a matter of state law. In this case, Leticia London's judgment creditor asked the trial court to appoint a re-ceiver and order that if she sold her home, she must turn the sales proceeds over to the receiver. The trial court granted the creditor's motion and denied Leticia's request for disbursement of some of the sales proceeds to her. Leticia challenged the turnover order through both an appeal and a petition for writ of mandamus; in the latter, she also asked us to compel the trial court to disburse the sales proceeds to her. We consolidated the two matters, and now hold that the trial court erred in appointing a receiver and in ordering the turnover of Leticia's homestead-sale proceeds. We therefore reverse and remand with instructions to the trial court to order the receiver to disburse the sales proceeds to Leticia.

**I. Factual and Procedural History**

Jeffrey and Leticia divorced in 1995, and Jeffrey was ordered to pay Leticia child support of $1,500 per month for their two children. In 2001, the trial court increased Jeffrey's monthly child-support obligation to $4,500 and awarded Leticia her attorney's fees as child support. Jeffrey appealed, and we reversed those portions of the trial court's order. *London v. London,* 94 S.W.3d 139, 151 (Tex.App.-Houston [14th Dist.] 2002, no pet.) (*"London I"*).

Leticia immediately filed another motion for modification, and Jeffrey counter-claimed to recoup the $86,250 he paid as increased child support while the earlier appeal was pending. *London v. London,* 192 S.W.3d 6, 10 (Tex.App.-Houston [14th Dist.] 2005, pet. denied) (*"London II"*). The trial court ruled in Leticia's favor, increased Jeffrey's monthly support obligation from $1,500 to $3,000, and awarded Leticia $6,000 in retroactive child support. The trial court also denied Jeffrey's recoupment claim and awarded Leticia $12,000 for attorney's fees in the nature of

child support. *Id.* Jeffrey appealed, and again we reversed. *Id.* at 19–20. We rendered judgment against Leticia for the increased child support Jeffrey paid while his two successful appeals were pending.

Jeffrey still had not been paid when he learned in 2009 that Leticia was attempting to sell her homestead and had specified that the title company pay part of the proceeds to the creditors she identified in the closing statement. Before the closing, Jeffrey asked the trial court to appoint a receiver and order Leticia to deliver the proceeds from any sale to the receiver. On December 1, 2009, the trial court signed an "Order Granting Turnover and Appointing Receiver." In the order, the trial court appointed and authorized a receiver to seize Leticia's non-exempt assets and pay the proceeds to Jeffrey to the extent necessary to satisfy the judgment. The same day, however, the trial court also signed an order entitled, "Final Judgment on Application for Turnover and Appointment of a Receiver Pursuant to Chapter 31 of the Texas Civil Practice and Remedies Code." In this order, the trial court again appointed the same receiver and ordered that if Leticia sold her homestead, she was to turn over the sales proceeds to the receiver.

While expressly reserving her right to appeal, Leticia moved for the disbursement of proceeds to pay some of her creditors. The trial court denied most of the requested relief, but ordered that if Leticia presented bills to the receiver to substantiate her debts, then the receiver could pay $1,874.00 to Leticia's landlord for past-due rent and late fees, $245.99 to her electricity provider for her overdue electric bill, and $109.46 to another utility company for her outstanding water bill. The trial court refused to order the receiver to pay $4,877.71 to the Internal Revenue Service for Leticia's back taxes; $1,056.48 to the bank financing her automobile loan for past-due payments, and $5,000.00 to her attorney for legal fees.

In partial compliance with the trial court's order, Leticia delivered a portion of the proceeds to the receiver.[1] She appealed the trial court's order appointing the receiver and requiring her to deliver to the receiver the proceeds from the sale of her homestead, and filed a petition for a writ of mandamus asking us to compel the trial court to order the receiver to disburse the sale proceeds directly to her. We consolidated the two matters.

## II. STANDARD OF REVIEW

 We begin our review with Leticia's appeal of the order appointing a receiver and requiring her to deliver the proceeds from the sale of her home to him. As we have previously stated, "receivership is a drastic remedy, to be used sparingly in the context of private litigation." *Covington Knox, Inc. v. State*, 577 S.W.2d 323, 326 (Tex.Civ.App.-Houston [14th Dist.] 1979, no writ). It nevertheless is a matter committed to the trial court's discretion, and we will not disturb that decision absent a clear abuse of discretion. *Id.* at 325. We similarly review turnover or-

---

1. The title company paid some of Leticia's creditors, and the trial court ordered Leticia to contact the creditors, convey the trial court's turnover order, and request that the payments be turned over to the receiver. The extent to which Leticia may have complied with the order and the extent to which her creditors cooperated—for they were not ordered to return the funds—is not shown in the record. *But cf. Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 227 (Tex.1991) (explaining that the turnover statute does not apply to nonjudgment debtors, and if the asset at issue is cash, then the trial court can only order the debtor to turn over amounts that are within her possession and control, and not cash that has been spent).

ders for abuse of discretion. *Barrera v. State,* 130 S.W.3d 253, 261 (Tex.App.-Houston [14th Dist.] 2004, no pet.) (citing *Beaumont Bank, N.A. v. Buller,* 806 S.W.2d 223, 226 (Tex.1991)).

## III. ANALYSIS

■ Before turning to the merits of Leticia's appeal, we first must address Jeffrey's contention that Leticia waived her complaint because she did not appeal the trial court's "Order Granting Turnover and Appointing Receiver." Instead, she appealed only the "Final Judgment on Application for Turnover and Appointment of a Receiver Pursuant to Chapter 31 of the Texas Civil Practice and Remedies Code." The two orders overlap, and the same judge signed both on the same day. In each, the trial court appointed Henry V. Radoff as the receiver. Before it was signed by the trial court, the ruling referred to as an "order" was filed as a proposed order on October 19, 2009, but the order referred to as the "final judgment" was filed only on December 1, 2009. After reviewing the transcript of the December 1, 2009 hearing, we conclude that the order denominated as the "final judgment" supersedes the proposed "order" signed the same day.

At the hearing, the trial court asked for the name of the person who would serve as the receiver, and R. Dean Irwin, one of Jeffrey's attorneys, stated that the name was "in the proposed order that now it has to be tweaked based on your ruling...." Scott Rothenberg, Jeffrey's other attorney, told the trial court that he could have the order drafted within an hour and a half, and then deliver it to the trial court by 2:00 p.m. The trial court instructed the attorneys to return at that time for entry of judgment. When the hearing reconvened, the trial court reviewed the language of the "final judgment" with the attorneys, instructed Jeffrey's attorney to make particular changes, and Rothenberg stated, "We can interlineate that." The order proposed in October 2009 does not contain this language, through interlineations or otherwise. The order filed on December 1, 2009 and denominated as the "final judgment" does contain the trial court's modifications, and they appear as interlineations just as discussed on the record.

Based on our review of the record, we conclude that the "final judgment" effectively supersedes the earlier-proposed order, although both were signed the same day. Because Leticia did not waive the issues she presents on appeal simply because she appealed only the "final judgment," we turn now to the merits of her arguments.

### A. Governing Law

■ The "turnover" statute is a procedural device used by judgment creditors to reach a debtor's non-exempt assets that otherwise would be difficult to reach by attachment or levy through ordinary legal process. TEX. CIV. PRAC. & REM.CODE § 31.002(a) (West 2008). Under the turnover statute, the trial court can appoint a receiver to take possession of the debtor's non-exempt assets, sell them, and pay the debtor's creditors with the proceeds. *Id.* at § 31.002(b)(3). But assets that are exempt from attachment, execution, or seizure are not subject to the turnover statute. *See id.* at § 31.002(a)(2), (b)(1), and (b)(3).

With certain exceptions inapplicable here, a homestead is exempt from seizure to satisfy creditors' claims. *See* TEX. PROP. CODE ANN. § 41.001(a), (b) (West Supp.

2009).[2] And if a homestead claimant sells her home, the sales proceeds similarly are exempt from seizure for six months. *See id.* § 41.001(c). Because of this exemption, the sales proceeds are beyond the reach of the turnover statute for six months from the date of sale. *See* Tex. Civ. Prac. & Rem.Code § 31.002(a)(2) (judgment creditor is entitled to the court's aid to reach property, including present or future rights to property, that "is not exempt from attachment, execution, or seizure"); *id.* § 31.002(b)(1) (court may "order the judgment debtor to turn over nonexempt property"); *id.* § 31.002(b)(3) (court may appoint a receiver authorized "to take possession of the nonexempt property"); *id.* § 31.002(f) (court may not enter or enforce an order "that requires the turnover of the proceeds of, or the disbursement of, property exempt under any statute"); § 31.002(h) (court may enter or enforce an order "that requires the turnover of nonexempt property").

On its face, then, the final judgment demonstrates that the trial court violated the turnover statute by appointing a receiver to hold the proceeds of the homestead's planned sale and by ordering Leticia to turn over the sales proceeds to the receiver. Because these actions violated the turnover statute, the trial court abused its discretion in issuing such an order. *See In re Gen. Elec. Co.,* 271 S.W.3d 681, 694 (Tex.2008) (trial court abuses its discretion by issuing an order that violates a statute).

Jeffrey agrees "that in the absence of some type of waiver," the proceeds from the sale of a homestead are exempt assets. He contends, however, that in specifying that the title company was to pay some of the proceeds of the sale to the creditors Leticia identified and in the amounts she specified, Leticia waived the statutory exemption.

## B. Absence of Waiver

Jeffrey contends that the statutory exemption applies only to those proceeds the debtor intends to apply toward the purchase of a new homestead within six months of the original homestead's sale. He therefore maintains that because Leticia expressed an intention to use some of the sale proceeds to pay for debts and living expenses rather than to buy a new homestead, she waived the exemption over that portion of the proceeds. Jeffrey argues that in issuing the turnover over, the trial court balanced Leticia's right to protect the homestead-sale proceeds from turnover for six months against Jeffrey's "*present* right to preserve the homestead proceeds for distribution to him conditioned upon Leticia's failure to purchase a substitute homestead within the statutory six (6) month period...." He additionally argues that within the six months after the sale, Leticia is not free to use these proceeds to pay other creditors.

Each of these assertions is incorrect. Jeffrey did not have the right to preserve Leticia's homestead-sale proceeds, and Leticia did have the right to use the proceeds to pay other creditors. In arguing to the contrary, Jeffrey relies on federal bankruptcy cases that he contends support his position that Leticia waived the exemption. *See, e.g., Zibman v. Tow (In re Zibman),* 268 F.3d 298, 304 (5th Cir.2001) (explaining that the exemption applicable to homestead-sale proceeds expires six months after the date of sale, and is not transformed into a permanent exemption just because it was in effect at the time the claimant petitioned for bankruptcy protection); *Hill v. Jones (In re Jones),* 327 B.R. 297, 302–

---

2. Exceptions are set forth in the state constitution and the Texas Property Code. *See* Tex. Const. art. XVI, § 50; Tex. Prop.Code Ann. § 41.001(b).

03 (S.D.Tex.2005) (denying the petitioner the requested discharge in bankruptcy because shortly before filing, the petitioner gave $22,000 of his homestead-sale proceeds to his fiance to buy a truck for his use, but titled in her name solely to protect it from the claims of petitioner's creditors); *Brown v. Kaba (In re Kaba),* Ch. 7 Case No. 05–92263–DML–7, Adv. No. 06–04107, 2007 WL 1556842 (N.D.Tex. May 25, 2007) (upholding bankruptcy trustee's objection to a transfer in which the debtors spent the bulk of their homestead-sale proceeds to satisfy an antecedent debt to their son, then filed bankruptcy claiming only federal exemptions, rather than the state-law exemption for proceeds from the sale of a homestead).[3] We do not find his arguments persuasive.

■ Texas state courts are not bound by the decisions of federal courts other than the United States Supreme Court. *Penrod Drilling Corp. v. Williams,* 868 S.W.2d 294, 296 (Tex.1993). And unlike the federal cases on which Jeffrey bases his argument, this is not a bankruptcy case, and we are not here presented with an attempt to defraud a creditor.[4] When a debtor files for bankruptcy protection, federal bankruptcy law limits a debtor's asset-management and debt-payment choices, but those limitations are inapplicable here. We instead are concerned with the validity of a turnover order. In the cases on which Jeffrey relies, no court held that a judgment creditor without a secured interest in the property could use the turnover stat-

ute to sequester exempt homestead-sale proceeds.

Moreover, none of the actual holdings of the cases on which Jeffrey relies requires the result he advocates. For example, the exemption expires six months after the date of sale; thus, as the court explained in *Zibman,* proceeds that the debtor chose not to spend during that time lose their exempt status. *Zibman,* 268 F.3d at 304. That remains true regardless of how the homestead claimant spent any of the proceeds during the exemption period. If, as in *Jones,* a debtor chooses to give away the sales proceeds or use them to make new purchases, then the debtor remains obligated to pay his preexisting debts just as he was before he sold the homestead. *See Jones,* 327 B.R. at 302–03. The same is true here: if Leticia chose to spend all of the proceeds from the sale, then regardless of whether she spent them to buy a new homestead, to pay preexisting debts, to pay living expenses, or for something else, her debt to Jeffrey would be undiminished. Finally, as in *Kaba,* a homestead claimant may choose not to rely on the exemption provided by state law. *See Kaba,* 2007 WL 1556842, at *1; *see also Solar Applications Eng'g, Inc. v. T.A. Operating Corp.,* 327 S.W.3d 104, 112 (Tex. 2010) ("Parties are free, of course, to contract out of statutory default rules such as those established by the lien statutes and may even contractually waive constitutional rights."). Leticia, however, has asserted her right to the statutory exemption.

**3.** *See Zibman,* 268 F.3d at 302 ("The debtor may have certain property exempted from the bankruptcy estate by electing to take advantage of either the federal exemption provisions in the Bankruptcy Code or those provided under state law."). In *Kaba,* the debtors elected to use the federal exemptions, not six-month exemption for homestead-sale pro-

ceeds available under state law. *See Kaba,* 2007 WL 1556842, at *1.

**4.** *But cf. Long Bell Lumber Co. v. Miller,* 240 S.W.2d 405 (Tex.App.-Amarillo 1951, no writ) (explaining, in a case outside the bankruptcy context, that the homestead exemption may not be lost by fraudulent acts done with the intent to defeat a creditor).

Although the holdings of *Zibman, Jones,* and *Kaba* do not support Jeffrey's position, Jeffrey relies on dicta in those cases that the purpose of the six-month exemption is to permit homeowners to use the proceeds from the sale of one homestead to purchase another homestead. He then reasons that a homestead claimant who intends to use some of the proceeds for a purpose other than the purchase of another homestead waives the exemption. The text of the statute, however, does not contain language limiting the exemption to those instances in which the homestead claimant plans to buy another home. The statutory exemption for homestead-sale proceeds instead provides in its entirety, "The homestead claimant's proceeds of a sale of a homestead are not subject to seizure for a creditor's claim for six months after the date of sale." TEX. PROP. CODE ANN. § 41.001(c). *See also MCI Sales & Serv. Inc. v. Hinton,* 329 S.W.3d 475, 501 (Tex.2010) ("[W]e consider the statute's plain and common meaning, and do not 'look to extraneous matters for an intent the statute does not state.'" (quoting *Nat'l Liab. & Fire Ins. Co. v. Allen,* 15 S.W.3d 525, 527 (Tex.2000))). Thus, the statute limits the options available to creditors, not the options available to homestead claimants. *Cf. Hardeman v. Judge,* 931 S.W.2d 716, 719 (Tex.App.-Fort Worth 1996, writ denied) ("A property owner, of course, may always elect to sell their property to pay debts, even though the debt could not have been enforced against the homestead property.").

Our reading of the statute is supported by case law, as well as by the statute's text. *See Henry v. Boedker,* 141 S.W. 811 (Tex.Civ.App.-San Antonio 1911, writ ref'd). In that case, Henry, an attorney, sold his client's homestead at her instruction, but applied the proceeds without her consent to the debt she owed him. The client successfully sued for the return of the proceeds, and in affirming the judgment, the court stated as follows:

Our statutes intended to and did make the proceeds of the homestead for six months a sacred fund for the benefit of the family, and never intended that the same should be taken by any process known to the law. On the date when Henry applied this money as a credit, he could not by any legal process have reached this fund and subjected it to the payment of his debt, without the consent of appellee. Had he placed it in the bank to her credit, he could not have garnished it. And it makes no difference whether he had placed it in the hands of some other agent or in her own hands; it was sacred from any process; and by his wrongful act in appropriating the money to his use he cannot be permitted to justify the appropriation of this sacred fund.... To allow him to do this would be allowing him to indirectly seize a homestead fund that was exempt, when he could not do it by any direct proceeding.

*Id.* at 812; *see also* TEX. CIV. PRAC. & REM.CODE § 31.002(f) ("A court may not enter or enforce an order under this section that requires the turnover of the proceeds of ... property exempt under any statute.").

There are instances in which a homestead claimant's intentions may be relevant in determining whether proceeds from the sale of property are exempt. For example, funds the debtor receives from the sale are not homestead-sale proceeds if, before the sale, the property ceased to be the claimant's homestead due to the claimant's "total abandonment [of the property] with an intention not to return and claim the exemption." *See Rancho Oil Co. v. Powell,* 142 Tex. 63, 69, 175 S.W.2d 960, 963 (1943). Here, however, Jeffrey does not dispute that the property was Leticia's

homestead at the time of sale. *See Ingram v. Summers,* 29 S.W.2d 447, 450 (Tex.Civ.App.-El Paso 1930, writ dism'd w.o.j.) (homestead claimant does not waive the exemption applicable to the proceeds of a future sale if the real property is claimed as a homestead up to the time of its sale).

We therefore conclude that Leticia did not waive the exemption by expressing her intention to use some of the proceeds for purposes other than purchasing another homestead. We sustain the sole issue presented in Leticia's appeal.

## C. Remedy

■ Leticia asks that if we reverse the trial court's turnover order, we remand with instructions to the trial court that the six-month statutory exemption does not begin to run until we issue our mandate or until the proceeds are released to her, whichever is later. We agree that this remedy is both available and appropriate in this case.

■ The homestead exemptions must "be liberally construed to effectuate their beneficent purposes." *Wallace v. First Nat'l Bank,* 120 Tex. 92, 102, 35 S.W.2d 1036, 1039 (1931). Thus, when homestead-sale proceeds have been withheld from the homestead claimant, courts may equitably toll the six-months' statutory exemption to prevent the claimant from being irrevocably deprived of the exemption's benefits. *See Jones v. Maroney,* 619 S.W.2d 296, 297–98 (Tex.Civ.App.-Houston [1st Dist.] 1981, no writ) ("[T]he purpose for which the statute was enacted would be destroyed if the court would not toll the statute during the period of time the proceeds were involved in court litigation.").

Here, an unsecured creditor has caused the homestead-sale proceeds to be wrongfully withheld from the judgment debtor in an attempt to accomplish the very thing the statute forbids—payment of his debt from homestead-sale proceeds. *See Walston v. Walston,* 971 S.W.2d 687, 695 (Tex. App.-Houston [14th Dist.] 1998, pet. denied) ("a party cannot be required to pay unsecured creditors from homestead proceeds"); *see also In re Bading,* 376 B.R. 143, 149–50 (W.D.Tex.2007) ("The odd and inequitable result [the creditor] seeks to achieve—destroying the debtor's homestead rights by simply being obstructionist—is wholly at odds with the salutary purpose of the homestead exemption."). We therefore conclude that the appropriate remedy is to toll the exemption as Leticia requested in her appeal.

## D. Petition for Writ of Mandamus

■ Appellate relief is available if the trial court abused its discretion in issuing the turnover order and the error was harmful; mandamus, on the other hand, is appropriate only when the trial court has clearly abused its discretion and the relator has no adequate remedy by appeal. *See In re Prudential Ins. Co. of Am.,* 148 S.W.3d 124, 135–36 (Tex.2004). In her petition for writ of mandamus, Leticia acknowledged that the trial court's turnover order was appealable, but she argued that the trial court's order is void, and thus, she was not required to show that she lacked an adequate remedy by appeal. We conclude, however, that the order was erroneous rather than void. *See Caulley v. Caulley,* 806 S.W.2d 795, 798 (Tex.1991) (addressing turnover order that violated a statute as an erroneous order rather than a void order); *see also Mapco, Inc. v. Forrest,* 795 S.W.2d 700, 703 (Tex.1990) (orig.proceeding) (per curiam) (explaining that a court's action is not void merely because it is "contrary to a statute, constitutional provision or rule of civil or appellate procedure"); *Browning v. Placke,* 698 S.W.2d 362, 363 (Tex.1985) (orig.proceed-

ing) (per curiam) ("All errors other than jurisdictional deficiencies render the judgment merely voidable . . . ."). And in disposing of her appeal, we have granted her all of the relief she requested for the erroneous order. We therefore deny Leticia's petition for writ of mandamus.

## IV. CONCLUSION

Because the trial court violated the turnover statute by appointing a receiver to hold exempt homestead-sale proceeds and ordering Leticia London to deliver exempt property to the receiver, we conclude that the trial court abused its discretion. We sustain Leticia's sole issue on appeal, reverse the trial court's order, and remand with instructions that the proceeds previously turned over to the receiver are to be returned to Leticia, where they will retain the character of exempt homestead-sale proceeds for six months from the later of (a) the date we issue our mandate, or (b) the date the proceeds are released to her. We deny Leticia's petition for writ of mandamus.